## A01A0249. THE STATE v. WATSON.
### (547 SE2d 789)

RUFFIN, Judge.

Barbara Watson was indicted for possessing a sawed-off shotgun in violation of OCGA § 16-11-122.[1] It is undisputed that when police seized the shotgun from Watson, it lacked a firing pin. Watson moved the trial court to dismiss the charge on the ground that the missing firing pin rendered the shotgun inoperable. The trial court granted the motion, and the State appeals. For reasons that follow, we reverse.

The Georgia Firearms and Weapons Act[2] (the "Act") proscribes the possession of certain firearms.[3] Specifically, the Act prohibits individuals from possessing "any sawed-off shotgun, sawed-off rifle, machine gun, dangerous weapon, or silencer except as provided in Code Section 16-11-124."[4] Section 16-11-124 enumerates four exceptions to the prohibition against possessing these weapons. Three of the exceptions apply to certain members of the law enforcement community and military servicemen, and to manufacturers and importers who have registered the particular weapon in accordance with the National Firearms Act.[5] The fourth exception applies to "[a]ny sawed-off shotgun, sawed-off rifle, machine gun, dangerous weapon, or silencer which has been modified or changed to the extent that it is inoperative. Examples of the requisite modification include weapons with their barrel or barrels filled with lead, hand grenades filled with sand, or other nonexplosive materials."[6]

In this case, the State concedes that the sawed-off shotgun could not be fired without the firing pin, but points out that the shotgun

---

[1] Watson was also indicted for driving under the influence of alcohol, but has not asserted any error concerning that charge.

[2] OCGA § 16-11-120 et seq.

[3] See OCGA § 16-11-122.

[4] Id.

[5] See OCGA § 16-11-124; see also 26 USC § 5841 et seq. (1989) (codifying National Firearms Act).

[6] OCGA § 16-11-124 (3).

could be readily restored to a firing condition by inserting a firing pin.[7] The State argues that the legislature intended for the exception to apply only to more permanent modifications which render the shotgun inoperable, as illustrated by the legislature's examples of a gun barrel filled with lead and a hand grenade filled with sand. Watson responds that if the legislature had intended to exempt only permanently modified firearms, it would have included the word "permanently" in the statute.

We are guided by the rules of statutory construction. The cardinal rule of statutory construction is to ascertain the intent of the legislature.[8] OCGA § 1-3-1 instructs that "[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy."[9] And, although we are usually required to apply the ordinary meaning "to all words, except words of art or words connected with a particular trade or subject matter,"[10] it is well settled that the wording used by the legislature does not always express its intent.[11] Thus,

> [t]o give effect to the intention of the legislature, courts are not controlled by the literal meaning of the statute, but the spirit or intention of the law prevails over the letter thereof. Where the letter of the statute results in absurdity or injustice or would lead to contradictions, the meaning of general language may be restrained by the spirit or reason of the statute. It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature.[12]

Finally, "[a]s a criminal statute, OCGA § [16-11-124] 'must be construed strictly against criminal liability and, if it is susceptible to more than one *reasonable interpretation*, the interpretation most favorable to the party facing criminal liability must be adopted.' "[13]

The interpretation of OCGA § 16-11-124 (3) is a matter of first impression; the reason for prohibiting sawed-off shotguns is not. As

---

[7] The trial court judge, who was "fairly familiar with firearms," similarly professed his knowledge that "a firing pin can be taken in and out very easy [sic]."

[8] *Johnson v. State*, 267 Ga. 77, 78 (475 SE2d 595) (1996).

[9] OCGA § 1-3-1 (a).

[10] OCGA § 1-3-1 (b).

[11] See *Johnson*, supra; *Hardwick v. State*, 264 Ga. 161, 163 (442 SE2d 236) (1994); see also *Roberts v. State*, 4 Ga. App. 207, 210 (60 SE 1082) (1908).

[12] (Citations and punctuation omitted.) *Hardwick*, supra at 163 (1).

[13] (Citations and punctuation omitted; emphasis supplied.) *Vines v. State*, 269 Ga. 438-439 (499 SE2d 630) (1998).

stated by the Supreme Court of Georgia, the evil of sawed-off shot-
guns is that they "are of a size such as can easily be concealed and
which are adapted to and commonly used for criminal purposes."[14]
Thus, the legislature found it appropriate to "prohibit the keeping
and carrying of sawed-off shotguns,"[15] except under limited circum-
stances. Three of those exceptions apply only to a limited class of peo-
ple who have a legitimate reason to possess a working sawed-off
shotgun: law enforcement personnel, servicemen who possess them
in the line of duty, and certain importers and manufacturers.[16]
Because the general public, as a rule, has no legitimate reason to
possess such a dangerous weapon, the legislature obviously deemed
it appropriate to authorize the public to possess sawed-off shotguns
only when they are inoperative and can do no harm.

The National Firearms Act, which is referenced in OCGA § 16-
11-124 (4), and also governs possession of sawed-off shotguns,[17] was
similarly enacted to regulate the possession of these "highly danger-
ous weapons."[18] Like Georgia's Act, the National Firearms Act does
not apply to shotguns that are incapable of discharging a shot.[19] If,
however, an inoperable shotgun can be "readily restored to fire," the
National Firearms Act applies.[20] Thus, in the numerous reported fed-
eral cases that have interpreted that statute, the courts have not con-
sidered whether the firearm was actually functional, but whether it
could be readily restored to fire.[21]

We believe the Georgia Legislature intended OCGA § 16-11-124
(3) to have a similar meaning. Although that section applies to
sawed-off shotguns that have been modified to make them "inopera-
tive," it is clear that not all such modifications would qualify under
the statute. Such is the reason the legislature provided examples of
the types of modifications that are required. Had the legislature
deemed it appropriate to make the immediate functional capacity of
the weapon the sole factor for consideration, then it would have dis-
pensed with providing any examples of the required modifications.
Indeed, under such interpretation a bright line test is surely more
favorable than one that requires consideration of whether the modifi-

[14] *Carson v. State*, 241 Ga. 622, 628 (5) (a) (247 SE2d 68) (1978).
[15] Id.
[16] See OCGA § 16-11-124 (1), (2), (4); 26 USC § 5841 (1989).
[17] See 26 USC §§ 5845 (a), (d) (defining short-barreled shotguns as firearm); 5861
(restricting possession) (1989).
[18] See *United States v. Greer*, 588 F2d 1151, 1155 (6th Cir. 1978).
[19] See 26 USC § 5845 (d), (h) (defining "shotgun" and "unserviceable firearm").
[20] See 26 USC § 5845 (d).
[21] See, e.g., *United States v. Yannott*, 42 F3d 999, 1006-1007 (6th Cir. 1994) (citing
numerous federal cases addressing whether weapon could be readily restored to fire); *S. W.
Daniel, Inc. v. United States*, 831 F2d 253 (11th Cir. 1987) (discussing whether weapon
which could be easily modified into a machine gun constituted a machine gun).

cation is akin to a lead-filled barrel or a sand-filled grenade. More-over, the interpretation applied by the trial court and urged by Watson "would severely undermine the efficacy of this legislation."[22] Individuals wrongfully possessing these weapons could avoid prosecution by simply removing any essential part that can readily be replaced. Likewise, if construed literally, the legislation would permit an individual to merely install a device on the dangerous firearm which would prevent firing, even if the device could be readily removed. Surely the legislature did not intend such absurd and unreasonable results.

We do not hold that the removal of the firing pin in this case, or in any case, does not qualify as a requisite modification under OCGA § 16-11-124. Rather, we merely conclude that the trial court erred in dismissing the charge of possessing a sawed-off shotgun. From the record before us, it does not appear as a matter of law that removing the firing pin from the sawed-off shotgun possessed by Watson is akin to filling the barrel with lead. It is ultimately for the jury to determine from the evidence whether such modification rendered the sawed-off shotgun inoperative as that term is used and illustrated in OCGA § 16-11-124 (3).[23]

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED APRIL 17, 2001

*Richard E. Currie, District Attorney, Albert H. Tester, Assistant District Attorney*, for appellant.
*James D. Hudson*, for appellee.

[22] *People v. Vigil*, 758 P2d 670, 673 (Colo. 1988).
[23] See *Myrick v. State*, 155 Ga. App. 496, 499 (4) (271 SE2d 637) (1980).