**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 12 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

NELLY MARGUERITE SCHMITT DeGASSO; MARIO RODRIGUEZ-AGUIRRE,

    Defendants-Appellants.

Nos. 03-5040, 03-5044

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CR-93-P)**

---

Submitted on the briefs:[*]

David E. O'Meilia, United States Attorney, and Allen J. Litchfield, Assistant United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

F.L. Dunn III, Tulsa, Oklahoma for Defendant-Appellant Mario Rodriguez-Aguirre.

Paul D. Brunton, Federal Public Defender, Julia L. O'Connell, Assistant Federal Public Defender, and Barry L. Derryberry, Research and Writing Specialist, Office of the Federal Public Defender, Tulsa, Oklahoma, for Defendant-Appellant Nelly Marguerite Schmitt DeGasso.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Before **TACHA**, Chief Judge, **BALDOCK**, and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

An officer of the Oklahoma Highway Patrol (OHP) stopped Defendants Nelly Marguerite Schmitt DeGasso and Mario Rodriguez-Aguirre along I-44 eastbound between Oklahoma City and Tulsa on the morning of May 27, 2002.  During the course of the stop, troopers recovered forty-eight kilograms of cocaine from a cavity in the bed of the vehicle in which Defendants were traveling.  Following the district court's denial of their motion to suppress, Defendants entered conditional pleas of guilty to a five-count superceding indictment related to drug trafficking.  *See* Fed. R. Crim. P. 11(a)(2).[1] The district court sentenced Defendants to ten years imprisonment, and they appealed. We exercise jurisdiction under 28 U.S.C. § 1291.  We review the district court's determination of reasonableness under the Fourth Amendment *de novo*.  *See United States v. Cervine*, 347 F.3d 865, 868 (10th Cir. 2003).  We affirm.

---

[1]  Count I charged Defendants with possession with intent to distribute cocaine in excess of five kilograms in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii).  Count II charged Defendants with conspiracy to possess with intent to distribute cocaine in excess of five kilograms in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(ii).  Count III charged Defendants with conspiracy to import cocaine in excess of five kilograms in violation of 21 U.S.C. §§ 963, 952(a), 960(a)(1), (b)(1)(B)(ii).  Count IV charged Defendants with interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952.  Count V charged Defendants with criminal forfeiture under 21 U.S.C. §§ 853 & 970.  The district court sentenced Defendants to concurrent terms of 120 months on Count I-III and 60 months on Count IV.

I

Oklahoma State Trooper Colby Cason was working I-44 on an overcast morning when he noticed a 2002 Chevrolet Avalanche apparently traveling with its fog lamps illuminated. As the Avalanche passed, Trooper Cason also observed that the truck's rear license plate was "mounted too low obscuring the lettering at the bottom on the tag." The trooper stopped the vehicle at approximately 9:38 a.m. He approached the vehicle and was able to identify the lettering on the tag as "Chihuahua," and the tag as originating from Mexico. Trooper Cason testified he was unable to run an NCIC check on a foreign tag.

Trooper Cason asked Defendant Rodriguez, the driver of the truck, to produce his driver's license. The trooper further asked Mr. Rodriguez to step out of the truck and take a seat in the front of the patrol car. Trooper Cason informed Mr. Rodriguez that he would issue him a warning citation. When the trooper requested proof of registration, Mr. Rodriguez, who spoke little English, indicated the registration was in the truck. The trooper, who spoke some Spanish, returned to the truck where he talked with Ms. DeGasso and retrieved the vehicle's registration. While Ms. DeGasso spoke better English than Mr. Rodriguez, neither was fluent. The district court found, however, that both Defendants readily understood Trooper Cason when he communicated with them.

During his conversations with Defendants, Trooper Cason became suspicious

3

of criminal activity.[2]  After issuing Mr. Rodriguez a warning citation and returning his license and registration, the trooper requested permission in Spanish to search the truck.  Trooper Cason's request to search occurred at approximately 9:49 a.m., eleven minutes into the stop.  Mr. Rodriguez replied "si."  Trooper Cason placed Ms. DeGasso in the back of the patrol car before beginning the search.  While seated in the patrol car, Defendants engaged in an incriminating conversation.  Among other things, Mr. Rodriguez expressed his wish that Trooper Cason would keep the cocaine and release them.  An OHP canine unit arrived, and the dog promptly alerted to the bed of the truck.  Trooper Cason handcuffed Defendants at approximately 9:58 a.m., twenty minutes into the stop.

---

[2]  The trooper testified as to the bases for his suspicion:

Q     Trooper, at the time that you asked to search the Avalanche, did you have some concerns or suspicions in your mind?
A     Yes.
Q     And what were they based on, sir?
A     Extreme nervousness on both the passenger and the driver.  I had confliction [sic] over ownership of the vehicle; one stated it belonged to a third party, the other stated it was his.  When I viewed the registration, it was another subject than the driver.  I had conflicting accounts of where they were going; one stated Detroit and the other said Missouri and Detroit. Then when I went to clarify those inconsistencies, the driver wasn't even sure – to me it just seemed like he wasn't sure about anything about Missouri.  They are coming from Chihuahua, Mexico, which is a known drug source city, going to Detroit or St. Louis, and both of those are considered hub cities.  Those were my suspicions. . . .  I believed the behaviors displayed by the driver were consistent with drug trafficking, based on my experience.

4

Following a suppression hearing, the district court held that the stop and detention and the search of Defendants' truck were reasonable under the Fourth Amendment. The court further held Defendants' incriminating statements were admissible because they had no expectation of privacy while seated in the patrol car. As to the stop, the court concluded:

> [P]ursuant to 47 O.S.Supp. 2001, §§ 1113(A)(2) and 12-217, Trooper Cason lawfully stopped Defendants' vehicle when he observed the vehicle's fog lamps illuminated during daylight hours when no fog was present, and because he was unable to read the origin of the license plate as the vehicle passed his patrol unit. Accordingly, the initial stop of Defendants for traffic violations was consistent with the requirements of the Fourth Amendment.

According to the district court, the subsequent detention and search were similarly reasonable under the circumstances because "the trooper acquired an objectively reasonable and articulable suspicion that the driver was engaged in criminal activity," or in the alternative, Defendant Rodriguez consented to the search.[3]

## II

The law pertaining to routine traffic stops is well established. The Fourth Amendment proscribes unreasonable searches and seizures. U.S. Const. amend. IV.

_____

[3] We note that although Defendant DeGasso was only a passenger in the vehicle, the Government apparently has never raised the issue of her Fourth Amendment standing to challenge any of the contested matters in this case. Because her standing, or lack thereof, is rooted in substantive Fourth Amendment law rather than Article III, the Government has waived any objection as to her standing. *See United States v. Price*, 54 F.3d 342, 345-46 (7th Cir. 1995); *see also United States v. Carhee*, 27 F.3d 1493, 1496 n.1 (10th Cir. 1994).

5

A traffic stop constitutes a Fourth Amendment seizure. *See United States v. Taverna*, 348 F.3d 873, 877 (10th Cir. 2003) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Because a routine traffic stop is more akin to an investigative detention than a custodial arrest, a traffic stop is reasonable if (1) the officer's action was justified at its inception, and (2) the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place. *See United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (en banc) (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

To determine the initial validity of a traffic stop, we ask whether the stop was "objectively justified." *Botero-Ospina,* 71 F.3d at 788. Generally, a routine stop is objectively justified when probable cause or reasonable articulable suspicion exists to believe a traffic violation has occurred. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (probable cause); *Botero-Ospina*, 71 F.3d at 787 (reasonable articulable suspicion). The actual motivations or subjective beliefs and intentions of the officer are irrelevant. *See Whren*, 517 U.S. at 813; *Botero-Ospina*, 71 F.3d at 787. In *Botero-Ospina*, the en banc Court set forth the standard for examining the constitutionality of a traffic stop:

> [A] traffic stop is valid under the Fourth Amendment if the stop is based
> on an observed traffic violation or if the police officer has reasonable
> articulable suspicion that a traffic or equipment violation has occurred
> or is occurring. It is irrelevant, for purposes of Fourth Amendment review,
> whether the stop in question is sufficiently ordinary or routine according
> to the general practices of the police department or the particular officer

6

making the stop.  It is also irrelevant that the officer may have had other subjective motives for stopping the vehicle.  Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*Id.* (internal quotations, citations, and footnote omitted).

Defendants argue that neither of the grounds accepted by the district court – the fog lights violation and license plate violation – constituted sufficient grounds for the traffic stop.  As explained below, we agree with Defendants regarding the fog lights violation but affirm the district court (one member of the panel dissenting) regarding the license plate.  Defendants also argue that their consent to search the vehicle was invalid because Trooper Cason improperly prolonged the detention after the warning citation was issued.  The district court found that "after the trooper had returned all of the defendant's documentation to the defendant, . . . Defendant Rodriguez was free to leave and a reasonable person would have known he was free to leave.  Defendant Rodriguez's continued answering of questions by Trooper Cason, at that point in time, became consensual."  That conclusion is consistent with this Court's precedents.  *See, e.g.*, *United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998).  We therefore affirm that portion of the district court's judgment for substantially the reasons stated in the district court's Order.

## A.

Defendants first challenge the purported fog lamp violation.  The statute in effect

7

on the date of the stop stated in relevant part: "Fog lamps shall not be used in substitution of headlamps, except under conditions of rain or fog rendering disadvantageous the use of headlamps." 47 Okla. Stat. § 12-217.D, *amended by* 2003 Okla. Sess. Laws ch. 411, § 34 (effective Nov. 1, 2003).[4] At the same time, a separate statute required the use of head lamps "at any time from a half hour after sunset to a half hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of five hundred (500) feet ahead . . . . " *Id.* § 12-201, *amended by* 2003 Okla. Sess. Laws ch. 411, § 21 (effective Nov. 1, 2003). The district court concluded OHP reasonably relied on section 12-217.D to stop Defendants:

> Trooper Cason reasonably believed that the Defendant had violated the Oklahoma statute regarding the use of fog lamps, therefore this Court finds, after reviewing the videotape of the traffic stop herein, that there is nothing within the context of the stop of Defendants' vehicle that appears to be pretextual or a subterfuge for a legitimate traffic stop. Rather, Trooper Cason's actions were taken in good-faith and with a reasonable belief that they were authorized.

Reviewing the district court's construction of Oklahoma state law *de novo*, *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991), we discern nothing in section 12-201

---

[4] Effective November 1, 2003, the Oklahoma legislature amended section 12-217.D to read: "A motor vehicle may be equipped with not to exceed two front fog lamps or two rear fog lamps which shall only be used when visibility . . . is limited to one-half (½) mile or less." 2003 Okla. Sess. Laws ch. 411, § 34 (amending 12 Okla. Stat. § 12-217).

or section 12-217.D which forbade the use of fog lamps in Oklahoma at the time of Defendants' stop. The videotape of the stop plainly reveals it occurred during daylight hours when visibility was clear. The only restriction section 12-217.D placed on the use of the truck's fog lamps is that such lamps could not be "used in substitution of headlamps" except under conditions of rain or fog. Section 12-201 required the use of headlamps from thirty minutes after sunset to thirty minutes before sunrise. Because Oklahoma law did not require the use of headlamps at the time of the stop, we fail to see how the truck's fog lamps were "used in substitution of headlamps."

The district court's conclusion that Trooper Cason "reasonably believed" Mr. Rodriguez violated section 12-217.D or had "a reasonable belief" the statute authorized the stop misses the mark. An officer's reasonable mistake of fact, as distinguished from a mistake of law, may support the probable cause or reasonable suspicion necessary to justify a traffic stop. *See United States v. Salinas-Cano*, 959 F.2d 861, 865 (10th Cir. 1992). Trooper Cason's failure to understand the plain and unambiguous law he is charged with enforcing, however, is not objectively reasonable. *See United States v. Chanthasouxat*, 342 F.3d 1271, 1277-80 (11th Cir. 2003); *see also United States v. Ramstad*, 219 F.3d 1263, 1267-68 (10th Cir. 2000) (Murphy, J., dissenting).

Moreover, the district court's factual findings regarding pretext, subterfuge, and good faith suggests the court applied, at least in part, an improper subjective standard to evaluate the legality of the initial stop. Whether Trooper Cason initially acted

9

in "good faith," or suspected criminal activity beyond a routine traffic violation, is irrelevant. Rather, the dispositive inquiry is whether Oklahoma traffic law regarding the use of fog lamps provided Trooper Cason with an *objectively justifiable basis* for stopping Defendants. *See Ramstad*, 308 F.3d at 1145 n.3. The short answer to that question is no.

B.

The next question is whether Oklahoma's statute requiring license plates to be "clearly visible at all times," 47 Okla. Stat. § 1113.A.2, applies to vehicles from states or nations other than Oklahoma. Section 1113.A.2 provides: "The license plate, decal and all letters and numbers shall be clearly visible at all times. The operation of a vehicle upon which the license plate is covered, overlaid or otherwise screened with any material . . . shall be a violation of this paragraph." Defendants do not dispute the officer's conclusion, accepted by the district court, that their license plate was "mounted too low obscuring the lettering at the bottom on the tag." *See* Dist. Ct. Order 11 ("this Court finds where an officer can not read a license plate, prior to stopping the vehicle, he clearly has probable cause, pursuant to 47 O.S. Supp. § 1151, to stop the vehicle and investigate further."). Defendants argue, however, that § 1113.A's plain language applies only to certificates of registration, license plates, and decals issued by the State of Oklahoma, and not to out-of-state plates. *See* Appellant's Br. 17 ("a violation of Oklahoma law did not occur, because a Mexican license plate is not required to be plainly visible").

Thus, Defendants submit that once Trooper Cason determined the license plate was issued outside Oklahoma and appeared valid, the purpose of the stop was satisfied and their subsequent detention was unlawful.

It is axiomatic that state courts are the final arbiters of state law. *See Mullaney v. Wilbur*, 421 U.S. 684 (1975); *Rael v. Sullivan*, 918 F.2d 874, 877 (10th Cir. 1990) (noting that federal court must interpret latest state pronouncement). "[W]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Wankier v. Crown Equipment Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). If the state supreme court has not interpreted a provision of the state's statutory code, the federal court "must predict how the court would interpret the code in light of [state] appellate court opinions, decisions from other jurisdictions, statutes, and treatises." *United States v. Colin*, 314 F.3d 439, 443 (9th Cir. 2002 ).[5] In doing so, we are bound to

---

[5]The dissent argues that the principle that, in the absence of an authoritative state court interpretation of a state statute whose meaning is contested, the obligation of a federal court is to predict what the state's highest court would do, applies only in "civil diversity cases" and not in "the criminal context." Diss. Op. 8. The dissent's only citation of authority for this argument, *United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003), does not support the claim. *Chanthasouxat* involved an unambiguous statute that was misinterpreted by a police officer to provide the basis for a traffic stop. *See id*. at 1278 ("Despite the government's arguments to the contrary, we see no ambiguity on the face of either the Alabama statute or the Birmingham ordinance"). The case held that a police officer's mistake of law, however reasonable, cannot support a traffic stop under the Fourth Amendment. *Id*. at 1277-80. The opinion does not suggest that federal courts are under any less obligation to interpret state law in light of a prediction of how it would be interpreted by the state court in criminal cases than in civil diversity cases.

follow rules of statutory construction of criminal statutes embraced by the Oklahoma

judiciary, including the rule that "criminal statutes be constructed strictly against the State

and liberally in favor of the accused," *Fenimore v. Oklahoma*, 78 P.3d 549, 551 (Okla.

Crim. App. 2003), keeping in mind that "rules of statutory construction . . . have as their

primary goal ascertainment of the legislature's intent," *Nealis v. Baird*, 996 P.2d 438, 460

(Okla. 1999); *see also State v. Young*, 989 P.2d 949, 955 (Okla. Crim. App. 1999)

("Statutes are to be construed to determine the intent of the Legislature, reconciling

provisions, rendering them consistent and giving effect to each.") (citation omitted).

Contrary to Defendants' assertion, we think it far more likely that the Oklahoma

court would interpret its law to apply to out-of-state drivers, rather than to liberate out-of-

state drivers from the obligation of displaying legible license plates.

The statute, 47 Okla. Stat. § 1113.A, provides:

> 1.  Upon the filing of a registration application and the payment of the fees provided for in the Oklahoma Vehicle License and Registration Act, the Oklahoma Tax Commission shall assign to the vehicle described in the application a distinctive number, and issue to the owner of the vehicle a certificate of registration and one license plate or a yearly decal for the year that a license plate is not issued.  The yearly decal shall have an identification number and the last two numbers of the registration year for which it shall expire.  Except as provided by Section 1113A of this title, the license plate shall be affixed to the exterior of the vehicle until a replacement license plate is applied for.  The yearly decal will validate the license plate for each registration period other than the year the license plate is issued.  The license plate and decal shall be of such size, color, design and numbering as the Tax Commission may direct.  However, yearly decals issued to the owner of a vehicle who has filed an affidavit with the appropriate motor license agent in accordance with Section 7-607 of this title shall be a separate and distinct color from all other decals issued

12

under this section.

2. The license plate shall be securely attached to the rear of the vehicle, except truck-tractor plates which shall be attached to the front of the vehicle. The Tax Commission may, with the concurrence of the Department of Public Safety, by Joint Rule, change and direct the manner, place and location of display of any vehicle license plate when such action is deemed in the public interest. The license plate, decal and all letters and numbers shall be clearly visible at all times. The operation of a vehicle upon which the license plate is covered, overlaid or otherwise screened with any material, whether such material be clear, translucent, tinted or opaque, shall be a violation of this paragraph.[6]

The first paragraph of this statute, which is directed to the Oklahoma Tax Commission, applies only to vehicles registered in the State of Oklahoma, but the second paragraph conspicuously lacks any such limitation. It provides that "[t]he license plate, decal and all

---

[6] Effective November 1, 2003, a different section, 47 Okla. Stat. § 12-204.1, was amended to provide:

The operation of a vehicle upon which the license plate is surrounded or framed, partially or in whole, by any additional lamp or lamps or otherwise lighted by any additional lamp or lamps, shall be a violation of this section. *In addition, display and visibility of the rear license plate shall be in compliance with paragraph 2 of subsection A of Section 1113 of Title 47 of the Oklahoma Statutes.*

Okla. Stat. tit. 47, § 12-204.1(C) (emphasis added). Because Title 47, section 12-101(A)(3) of the Oklahoma Statute makes it a misdemeanor for "*any person . . .* [t]o fail to perform an act required under this chapter," this provision resolves the issue in this case for the future. The legislative history does not reveal whether the amendment was intended as a clarification of prior law, or as a change. The amendment thus casts no light, either way, on the meaning of the statute at issue in this case. We should not punish a legislature's commendable efforts to make the law clearer by treating the amendment as a "telltale sign" that the prior statute was unconstitutionally ambiguous, as the dissent suggests. Diss. Op. 7.

letters and numbers shall be clearly visible at all times," and that "[t]he operation of a vehicle upon which the license plate is covered, overlaid or otherwise screened with any material . . . shall be a violation of this paragraph." By its terms, this portion of the statute applies to any vehicle equipped with a license plate, whether or not it is from Oklahoma. This accords with the common-sense proposition that police officers have no less need to identify out-of-state vehicles than they have to identify those registered in Oklahoma.

Defendants argue that the use of the definite article ("the") in the second paragraph confines application of that paragraph to the license plates already mentioned in the first paragraph. Depending on the context, that might sometimes be a reasonable linguistic inference. In this context, however, it would lead to the absurd result that out-of-state drivers in Oklahoma are free to drive with obscured license plates, or no plates at all. We think it unlikely that the Oklahoma courts would interpret their statute in so restrictive a manner.

The dissenting opinion denies that Defendants' interpretation would lead to this absurd result, arguing that "[a] vehicle traveling along a public road without a license plate necessarily gives rise to reasonable suspicion of criminal activity, thereby allowing a police officer to stop the vehicle and investigate the possibility the vehicle is stolen or otherwise a part of criminal activity." Diss. Op. 10. But under the dissent's analysis, as soon as the police discovered that the vehicle was from out of state, they would be

14

required to let the occupants go on their way (absent reasonable suspicion based on some other traffic violation or suspicious circumstance). See *id*. at 3 (arguing that after the officer determined there was no violation, "the Fourth Amendment prohibited the officer from detaining defendant for questioning, but instead required the officer to allow defendant to proceed without further delay"), *citing United States v. McSwain*, 29 F.3d 550 (10th Cir. 1994). That would plainly hamper the ability of police to determine the status and identity of out-of-state vehicles.

Moreover, the statute expressly defines the offense of operating a vehicle with an obscured license plate as "a violation *of this paragraph*." 47 Okla. Stat. § 1113.A.2. This indicates that the second paragraph – as opposed to the entirety of § 1113.A – is the legally operative provision. While the first paragraph of the section is limited to Oklahoma vehicles, the second paragraph is not. It would be inconsistent with the structure of the statute to incorporate limitations from the first paragraph into the second, when the legislature defined the violation solely in terms of the second paragraph. We thus cannot accept the dissent's suggestion that we narrow the plain language of § 1113.A.2 by reference to the "context" of "subsection A in full." See Diss. Op. 4. The violation defined by the legislature is not of "subsection A in full" but of paragraph 1113.A.2 in particular.

The parties have not cited, and we have not located, an Oklahoma decision addressing whether 47 Okla. Stat. § 1113.A.2 applies to out-of-state license plates. But

15

the Court of Appeals of Kansas has interpreted that state's similar law as applying to out-of-state plates. *See Colin*, 314 F.3d at 443 (where state supreme court has not interpreted a state statute, it is appropriate to look to interpretations by other jurisdictions). In *State v. Hayes*, 660 P.2d 1387 (Kan. Ct. App. 1983), a motorist driving in Kansas with a partially obscured Indiana license plate was stopped by a trooper for violating the Kansas equivalent of 47 Okla. Stat. § 1113.A.2. In the course of the stop, the troopers spotted packages of marijuana in plain view in the vehicle. On a motion to suppress, the trial court held that the Kansas statute did not apply to vehicles with out-of-state plates, and thus that the stop was not justified. The Kansas Court of Appeals reversed, reasoning:

> Taken to its logical extreme, under the restrictive view of our statute taken by the trial court an out-of-state motorist could drive with obscured tags or no tags at all. . . . The purpose of requiring display of a tag in the first place, and legibility of tag displayed, is demonstrated by the very occurrence here. The obscured tag frustrated the officers in a routine license plate check. Law enforcement officials frequently must determine from tag numbers whether a vehicle is stolen; whether it is properly registered; or whether its occupant is suspected of a crime, is the subject of a warrant, or is thought to be armed. Out-of-state cars on Kansas highways are subject to the same police imperative as local vehicles.

*Id*. at 1389. The same conclusion has been reached by the other state courts that have addressed the issue. *See Nelson v. State*, 544 S.E.2d 189, 190 (Ga. App. 2001) (applying Georgia obstruction statute to car with Texas license plates); *People v. Miller*, 611 N.E.2d 11, 20 (Ill. App. 1993) (treating Illinois statute requiring visible license plates as applicable to a Texas vehicle, but affirming grant of suppression motion on other

16

grounds).[7] Moreover, while every state has some statute prohibiting the obstruction of license plates, none has interpreted its statutory scheme to allow out-of-state cars to be driven with obscured license plates. We find Defendants' argument that Oklahoma courts would interpret section 1113.A.2 in such a novel way unconvincing. We therefore conclude that the Oklahoma courts would interpret section 1113.A.2 to apply to out-of-state vehicles, including Defendants'.

This case is thus easily distinguishable from *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994), on which the dissenting opinion relies. In *McSwain*, the traffic stop was made in order to determine whether a temporary registration sticker was valid; there was no requirement that it be visible or unobscured. In that case, when the officer approached the vehicle and found that the sticker was valid, the purpose for the stop was over. In this case, the violation was that the lettering on the license plate was not "clearly visible," which remained true even after the trooper approached the truck and was able, at

---

[7]The dissent objects that because these cases "involved the legality of the stop itself rather than its duration," they are "of little help in construing the precise language of § 1113A." Diss. Op. 9. We do not understand the objection. The question is whether the statutes apply to out-of-state vehicles; the precise procedural context in which the issue arises has no bearing. The dissent also asserts, without explanation, that "the similarity between those States' respective statutes and § 1113.A is that they all address the display of license plates. That's as far as it goes." Diss. Op. 9. The statutes, however, are substantial equivalents of 47 Okla. Stat. § 1113.A, and present essentially the same interpretive issue. In each instance, the requirement that the license plate be plainly visible is expressed broadly, without limitation to in-state vehicles, but the surrounding statutory context contains provisions applicable only to vehicles registered in state. The language of the Kansas decision, quoted above, makes it clear that the Kansas court considered and rejected essentially the same argument Defendants make here.

that point, to read it.

Accordingly, having found that the state identification on the Defendants' license plate was obscured by the bumper and not "clearly visible" from the highway, Trooper Cason was justified in making the traffic stop, notwithstanding the fact that the vehicle was registered in Mexico.

C.

The dissenting opinion argues that our decision "stands an established principle of criminal due process – that an ambiguous penal statute must be construed in favor of a defendant – on its head." Diss. Op. 1. Not so. Both the Supreme Court and this Court have repeatedly made clear that the rule of lenity applies only in cases of "grievous ambiguity or uncertainty," *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994), *quoting Chapman v. United States*, 500 U.S. 453, 463 (1991), "where all other techniques for statutory construction leave the court in equipoise." *United States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003). The premise of the dissent -- that due process requires any penal statute containing an "ambiguity" to be construed in favor of the defendant -- is contrary to established precedent. See *Muscarello v. United States*, 524 U.S. 125, 138 (1998) ("The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule [of lenity], for most statutes are ambiguous to some degree."); *Staples*, 511 U.S. at 619 n.17; *Chapman*, 500 U.S. at 463; *Smith v. United States*, 508 U.S. 223, 239 (1993); *United States v. Bass*, 404 U.S. 336, 347 (1971); *United*

18

*States v. Fisher*, 2 Cranch 358, 386 (1805). Rather, a court must first consult "all available relevant materials," *United States v. Wilson*, 10 F.3d 734, 736 (10th Cir. 1993), and invoke the rule of lenity only as a tie-breaker when ordinary means of discerning statutory meaning leave the issue in "equipoise." *Ruiz-Gea*, 340 U.S. at 1188. See *United States v. Wells*, 519 U.S. 482, 499 (1997) ("'The rule of lenity applies only if, "after seizing everything from which aid can be derived," . . . we can make "no more than a guess as to what Congress intended"'" (ellipses in original) (quoting *Reno v. Koray*, 515 U.S. 50, 65 (1995), in turn quoting *Smith*, 508 U.S. at 239, and *Ladner v. United States*, 358 U.S. 169, 178 (1958)); *accord*, *United States v. Shabani*, 513 U.S. 10, 17 (1994).

Among the ordinary sources of statutory meaning to which courts must refer is the statutory purpose. As the Supreme Court has explained, "[t]he rule of lenity is not invoked by a grammatical possibility. It does not apply if the ambiguous reading relied on is an implausible reading of the congressional purpose." *Caron v. United States*, 524 U.S. 308, 316 (1998)(citation omitted). In *Caron*, for example, the Supreme Court rejected application of the rule of lenity to an admittedly ambiguous statute because this would "yield[] results contrary to a likely, and rational, congressional policy." *Id*. at 315.

Our decision here is based on far more than a "guess" about what the Oklahoma legislature intended. We rely not only on the plain language of the relevant paragraph of the statute, which contains no limitation to Oklahoma-registered vehicles, but on the legislature's definition of the offense in terms of § 1113.A.2 in particular and not §

19

1113.A in general, on the self-evident statutory purpose, and on the interpretation given similar statutes by other state courts. The Kansas Court of Appeals in *Hayes*, *supra*, explained why an interpretation that exempts out-of-state vehicles from the requirement that license plates be visible is highly implausible and would undermine public safety. The dissent offers no reason – beyond mere grammatical possibility – that a legislature would exempt out-of-state vehicles from the requirement. As the Kansas court stated, "out-of-state cars on Kansas highways are subject to the same police imperative as local vehicles." *Hayes*, 660 P.2d at 1689.

The role of due process in this context is to provide "fair warning" to the persons to whom the statute applies. *United States v. Lanier*, 520 U.S. 259, 266 (1997). Oklahoma's requirement that "[t]he license plate, decal and all letters and numbers shall be clearly visible at all times," and that "[t]he operation of a vehicle upon which the license plate is covered, overlaid or otherwise screened with any material . . . shall be a violation of this paragraph," 47 Okla. Stat. § 1113.A.2, meets that standard. Far from being surprised by application of this language to out-of-state vehicles, as the dissent oddly speculates (Diss. Op. 6), we suspect that a "nonresident driving along an Oklahoma highway" with an obscured license plate would be astonished (if pleasantly so) to find that his out-of-state status exempted him from so universal a requirement as that of mounting the license plate

in such a way that police officers can read it without stopping the vehicle.[8]

It bears mention that the states whose precedents we have found useful[9] construe criminal statutes strictly against the state and liberally in favor of the defendant. *State v. Pollard*, 44 P.3d 1261, 1264 (Kan. 2002) ("When construing criminal statutes, it is well settled that such statutes must be strictly construed in favor of the accused. Any reasonable doubt about meaning is decided in favor of anyone subjected to the criminal statute."); *State v. Watson*, 547 S.E.2d 789, 791 (Ga. App. 2001) ("[Criminal statutes] must be construed strictly against criminal liability and, if it is susceptible to more than one *reasonable interpretation*, the interpretation most favorable to the party facing criminal liability must be adopted." (emphasis in original) (internal quotation marks and citation omitted)); *People v. Schaeffer*, 654 N.E.2d 267, 268 (Ill. App. 1995) ("Criminal statutes must be strictly construed in favor of the accused." (internal quotation marks and

---

[8]The dissent's speculation that a "nonresident driving along an Oklahoma highway with a license plate mounted entirely consistent with the design of a vehicle's unaltered bumper, unobscured by any foreign material (frame, plastic or otherwise), would [be unlikely to] understand he or she was violating § 1113.A," Diss. Op. 6-7, relies for its plausibility on facts not in evidence here, namely that the defendant's license plate was "unobscured by any foreign material." The district court found as a fact that "[b]ecause of the configuration of the tag behind the rear bumper, Trooper Cason could not ascertain the origin of [the] license plate." Dist. Ct. Order 2. This was in accord with Trooper Cason's testimony that "[t]he lettering that spells out Chihuahua on the bottom portion of the tag is hung lower than that rubber molding that goes across making it unreadable." Defendants did not dispute that fact in district court, and they do not challenge it here. The issue therefore is not whether a motorist with a properly mounted, unobscured license plate would be surprised by application of Okla. Stat. § 1113.A.2, but whether an out-of-state motorist with obscured plates would be so surprised.

[9]*See* above at pages 15-16.

21

citation omitted)).  They nonetheless have found that statutes requiring license plates to be clearly visible apply to out-of-state vehicles, despite any statutory language so stating.[10] Thus, the dissent's supposition that the rule of lenity would require the opposite conclusion is not borne out by the precedents.

It follows that Trooper Cason's stop of Defendants' vehicle was lawful, that further questioning was permissible, and that there was no need to exclude the evidence or to overturn the resulting conviction.  The district court's order denying Defendants' motion to suppress should therefore be, and is **AFFIRMED.**

---

[10]Although, as the dissent points out, Diss. Op. 10, none of the state decisions on which we have relied expressly alluded to the rule of lenity, we presume that the decisions were rendered in accordance with those courts' usual standards of interpretation, including the rule of lenity.

Nos. 03-5040, 03-5044, United States v. DeGasso
**BALDOCK**, Circuit Judge, dissenting.

Let me begin by clarifying where the Court and I agree and disagree. We agree Trooper Cason's stop of Defendants' truck was justified based on his reasonable suspicion the license plate failed to comply with 47 Okla. Stat. § 1113.A. We disagree, however, on whether the truck's license plate actually failed to comply with § 1113.A, thus justifying Defendants' continuing detention. For reasons which follow, Defendants in my view did not violate § 1113.A. Instead, Trooper Cason's reasonable suspicion that Defendants violated § 1113.A ended once the trooper walked within ten feet of the truck's rear bumper and was able to identify the truck's foreign license plate. At that point, Trooper Cason's detention of Defendants was no longer reasonably related in scope to the circumstances which justified the stop at its inception and violated the Fourth Amendment. Despite its denial, the Court's "prediction" as to how Oklahoma's highest court might interpret § 1113.A in this case stands an established principle of criminal due process–that an ambiguous penal statute which fails to provide fair warning to the accused must be construed in favor of the accused–on its head. Accordingly, I dissent.

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). Once an officer discovers that a traffic violation has not occurred, however, the law requires the officer to allow

the driver to proceed without further delay.  United States v. McSwain, 29 F.3d 558, 561-62 (10th Cir. 1994).  "Further delay is justified only if the officer has reasonable suspicion of [additional] illegal activity or if the encounter has become consensual."  United States v. Holt, 264 F.3d 1215, 1221 (10th Cir. 2001) (en banc).

In McSwain, the officer stopped defendant's vehicle solely to verify the validity of a temporary registration sticker which "*appeared* to be covered with reflective tape."  McSwain, 29 F.3d at 560 (emphasis added).  Upon approaching the vehicle on foot, the officer observed the sticker was not covered with reflective tape and appeared valid.  We concluded the purpose of the stop was satisfied at that point, and "further detention of the vehicle to question [defendant] about his vehicle and travel itinerary and to request his license and registration exceeded the scope of the stop's underlying justification."  Id. at 561.  McSwain is binding precedent and controls the disposition of this case:

> The government nevertheless contends that Tenth Circuit precedent entitles Trooper Avery to engage in . . . minimally intrusive conduct.  Though we have held in several cases that an officer conducting a routine traffic stop may inquire about identity and travel plans, and may request a driver's license and vehicle registration, run a computer check, and issue a citation, these cases . . . are inapposite.  They all involve situations in which the officer, at the time he or she asks questions or requests the driver's license and registration, still has some objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring.  Such cases stand in sharp contrast to the facts of the instant case:  Trooper Avery's reasonable suspicion regarding the validity of Mr. McSwain's temporary registration sticker was completely dispelled *prior* to the time he questioned Mr. McSwain and requested documentation.  Having no objectively reasonable articulable suspicion that illegal activity had occurred or was occurring, Trooper Avery's actions in questioning Mr. McSwain and requesting his license and registration exceeded the limits of a lawful investigative

2

detention and violated the Fourth Amendment.

Id. at 561-62 (internal citations, quotations, and brackets omitted).

The facts of our case are strikingly similar to the facts of McSwain. In McSwain, the officer had reasonable suspicion the vehicle's temporary registration sticker might not be valid. After stopping the vehicle, however, the officer discovered the sticker appeared valid. At that point, the Fourth Amendment prohibited the officer from detaining defendant for questioning, but instead required the officer to allow defendant to proceed without further delay. Id. at 561.[1] Similarly, in our case, Trooper Cason had reasonable suspicion Defendants' license plate was obscured. After stopping the vehicle, however, the trooper discovered the properly mounted license plate was issued in Mexico. To illustrate the point, a photograph of the truck's rear license plate as it appeared at the time of the stop is included as an Appendix.

The Court reasons that because the license plate was not "clearly visible," the plate failed to comply with 47 Okla. Stat. § 1113.A. The Constitution requires me to conclude otherwise. On its face, § 1113.A applies only to Oklahoma license plates, not

---

[1] In McSwain, the Government asserted "that not allowing an officer to request a driver's license and registration in this type of case will require the officer to 'stop the vehicle, approach the vehicle on foot, observe it, then walk away, get in his police car, drive away and wave, leaving the stopped citizen to wonder what had just occurred.'" 29 F.3d at 562. We explained our holding did "not require such absurd conduct by police officers. As a matter of courtesy, the officer could explain to drivers in Mr. McSwain's circumstances the reason for the initial detention and then allow them to continue on their way without asking them to produce their driver's license and registration." Id.

3

out-of-state or foreign plates.  Because the portion of subsection A on which the Court

rests its case must be read in context to best understand the Court's legal quandary,

I quote subsection A in full, italicizing the Court's focus:

**§ 1113.  Issuance of certificate of registration, license plates and decals–Requirements and specifications for license plates–Issuance of license plates without documentary evidence of ownership . . .**

   A.   1.  Upon the filing of a registration application and the payment of the fees provided for in the Oklahoma Vehicle License and Registration Act, the Oklahoma Tax Commission shall assign to the vehicle described in the application a distinctive number, and issue to the owner of the vehicle a certificate of registration and one license plate or a yearly decal for the year that a license plate is not issued.  The yearly decal shall have an identification number and the last two numbers of the registration year for which it shall expire.  Except as provided by Section 1113A of this title, the license plate shall be affixed to the exterior of the vehicle until a replacement license plate is applied for.  The yearly decal will validate the license plate for each registration period other than the year the license plate is issued.  The license plate and decal shall be of such size, color, design and numbering as the Tax Commission may direct.  However, yearly decals issued to the owner of a vehicle who has filed an affidavit with the appropriate motor license agent in accordance with Section 7-607 of this title shall be a separate and distinct color from all other decals issued under this section.

   2.  The license plate shall be securely attached to the rear of the vehicle, except truck-tractor plates which shall be attached to the front of the vehicle.  The Tax Commission may, with the concurrence of the Department of Public Safety, by Joint Rule, change and direct the manner, place and location of display of any vehicle license plate when such action is deemed in the public interest.  *The license plate, decal and all letters and numbers shall be clearly visible at all times.  The operation of a vehicle upon which the license plate is covered, overlaid or otherwise screened with any material, whether such material be clear, translucent, tinted or opaque, shall be a violation of this paragraph.*

4

3. Upon payment of the annual registration fee provided in Section 1133 of this title, the Tax Commission or a motor license agent may issue a permanent nonexpiring license plate to an owner of one hundred or more commercial motor vehicles and for vehicles registered under the provisions of Section 1120 of this title. Upon payment of the annual registration fee, the Tax Commission shall issue a certificate of registration that shall be carried at all times in the vehicle for which it is issued.

(emphasis added).

Construing § 1113.A consistent with principles of due process, McSwain makes the illegality of Trooper Cason's continuing detention of Defendants in this case apparent. Only Trooper Cason's initial suspicion that the truck's license plate was obscured justified the stop. Trooper Cason testified and the district court found, however, he was able to read the truck's license plate and identify its foreign origin once he walked to within ten feet of the truck's rear bumper. The license plate appeared properly mounted consistent with the design of the truck. At that point, Trooper Cason no longer had reasonable suspicion that illegal activity had occurred or was occurring. Bound by McSwain, the nearly identical facts of this case require me to conclude Trooper Cason's continuing detention of Defendants exceeded the scope of the circumstances which justified the stop at its inception. See Florida v. Royer, 460 U.S. 491, 500 (1983) (An investigative detention "must be carefully tailored to its underlying justification . . . [and] must . . . last no longer than is necessary to effectuate the purpose of the stop.").

5

Reading § 1113.A's proscription against "covered, overlaid or otherwise screened" license plates in a vacuum, however, the Court holds such language applies to both resident and nonresident plates and provided Trooper Cason with the traffic violation he needed to detain Defendants for questioning. The Court, in effect, takes refuge in an ambiguous Oklahoma penal statute and construes the statute in favor of the Government. In so doing, the Court snubs the fundamental principle that due process requires a penal statute provide reasonable notice to the accused that his or her conduct is forbidden: "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." United States v. Lanier, 520 U.S. 259, 267 (1997).[2] To better understand the Court's predicament, one need only ask whether a nonresident driving along an Oklahoma highway with a license plate mounted entirely consistent with the design of a vehicle's unaltered rear bumper, unobscured by any foreign material (frame, plastic or otherwise), would understand he or she was violating § 1113.A.

---

[2] In Lanier, the Court explained that "as a sort of junior version of the vagueness doctrine, the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." 520 U.S. at 266 (internal quotations and citations omitted). See State v. Patton, 837 P.2d 483, 484-85 (Okla. Crim. App. 1992) (strictly construing a misdemeanor offense statute); see also United States v. Miller, 146 F.3d 274, 278-79 (5th Cir. 1998) (strictly construing a misdemeanor offense statute to invalidate a traffic stop).

6

Because no Oklahoma court has interpreted § 1113.A, we have only the statute's language, viewed in the proper context, to guide us. Section 1113.A's plain language, considered in its entirety, applies only to certificates of registration, license plates, and decals issued by the State of Oklahoma–a proposition the Government, according to my reading of its brief, does not address. I concede Oklahoma courts *might* construe § 1113.A consistent with this Court's view. The Court concedes Defendants' construction of § 1113.A "might sometimes be a reasonable linguistic" interpretation. Court's Op. at 14. Our differing views demonstrate that § 1113.A is *at the very least* ambiguous. Again, despite the Court's denial, another telltale sign that the subject provision of § 1113.A is ambiguous is the Oklahoma legislature's recent amendment to 47 Okla. Stat. § 12-204.1 (effective November 1, 2003). As the Court recognizes, § 12-204.1 applies § 1113.A's rear license plate "display and visibility" provision to all vehicles traveling on Oklahoma highways. Court's Op. at 13 n.6; *see also* 47 Okla. Stat. § 12-101.1.B ("No person shall knowingly equip or operate on the highways of this state *any* vehicle with equipment unless it complies with the requirements of this chapter.") (emphasis added). That § 12-204.1's "legislative history does not reveal whether the amendment was intended as a clarification of prior law, or as a change" is unimportant. <u>See</u> Court's Op. at 13 n.6. What is important is the amendment "casts light" on the *obvious uncertainty* as to § 1113.A's application to nonresident vehicles such as Defendants'. <u>Compare</u> <u>id.</u>

According to the Court, my interpretation of § 1113.A is "novel." Court's Op.

at 18. My reliance upon established constitutional principles and standard rules of statutory construction to construe § 1113.A–an ambiguous penal statute–is hardly "novel." Given the entirety of § 1113.A addresses the "[i]ssuance of certificate[s] of registration, license plates and decals" *in the State of Oklahoma*, my interpretation is not only reasonable, but correctly based upon the statute's language and context. Moreover, the Court could not (and does not) assert that all of § 1113.A.2 applies to nonresident vehicles; otherwise, under the sentence directly preceding the Court's focus, the Oklahoma Tax Commission would have plenary authority to burden interstate commerce by "direct[ing] the manner, place and location of display of any vehicle license plate" present upon its public roads, regardless of the origin of the plate.

Absent any Oklahoma decision construing § 1113.A, the Court declares, to quote a civil diversity case, "'the federal court must attempt to predict what the state's highest court would do.'" Court's Op. at 11 (quoting Wankier v. Crown Equipment Corp., 353 F.3d 862, 866 (10th Cir. 2003)). And according to the Court, "we think it far more likely" that Oklahoma's highest court would interpret § 1113.A.2 consistent with this Court's view that a § 1113.A.2 violation actually occurred in this case. Id. at 12. The Court's approach to statutory interpretation is appropriate for civil diversity cases, but in the criminal context, due process requires more. See United States v. Chanthasouxat, 342 F.3d 1271, 1278-79 (11th Cir. 2003). The Court cites to cases that simply do not support the proposition that courts may "sweep behavior into [a penal] statute which

8

the authors of the statute may have had in mind but failed to put into the plain language of the statute." Id. at 1278. "Far more likely" is not the standard for construing a penal statute. The fundamental principle that due process requires a penal statute to provide reasonable notice of what conduct it forbids requires us to strictly construe § 1113.A. Due process does not permit a court to simply "predict the outcome," lest courts construe a vague or ambiguous penal statute in favor of the Government. See id. Rather, reasonable notice to the accused that his or her conduct is unlawful is the benchmark.[3]

The Court's reliance on three cases from intermediate state appellate courts outside Oklahoma, all of which involved the legality of the stop itself rather than its duration, are of little help in construing the precise language of § 1113.A. See Nelson v. State, 544 S.E.2d 189 (Ga. App. 2001); People v. Miller, 611 N.E.2d 11 (Ill. App. 1993); State v. Hayes, 660 P.2d 1387 (Kan. App. 1983). Without belaboring the point, the similarity between those States' respective statutes and § 1113.A is that they all address the display of license plates. That's as far as it goes. Yet the Court proclaims

---

[3] The Court cites one federal criminal decision, a Ninth Circuit case which held an officer *lacked* reasonable suspicion to stop defendant's vehicle for lane straddling, for the proposition that *in criminal cases* "the federal court 'must predict how the court would interpret the code in light of [state] appellate court opinions, decisions from other jurisdictions, statutes, and treatises.'" Court's Op. at 11 (quoting United States v. Colin, 314 F.3d 439, 443 (9th Cir. 2002)). The other two cases the Court cites simply acknowledge a state court's prior construction of its own penal laws is binding on a federal court. See Mullaney v. Wilbur, 421 U.S. 684, 960-91 (1975); Rael v. Sullivan, 918 F.2d 874, 877 (10th Cir. 1990). Absent an authoritative interpretation of § 1113.A itself, due process requires me to rely on its language and context.

9

"[t]he same conclusion has been reached by the other [three] state courts that have addressed the issue." Court's Op. at 16. My review of the three cases cited by the Court reveals no mention of the rule of lenity. My research further reveals that no court has construed a statute with language and context similar to § 1113.A's.

The Court claims my construction of § 1113.A "would lead to the absurd result that out-of-state drivers in Oklahoma are free to drive with obscured license plates, or no plates at all." Court's Op. at 14. Nothing could be further from the truth. A vehicle traveling along a public road without a license plate presents a suspicious circumstance necessarily giving rise to reasonable suspicion of criminal activity, thereby allowing a police officer to stop the vehicle and investigate the possibility the vehicle is stolen or otherwise a part of criminal activity. Further, as this case illustrates, a police officer is justified in stopping any vehicle traveling within Oklahoma which appears to have an obscured license plate. If upon closer inspection, a license plate is in fact "covered, overlaid or otherwise screened" and its origin is unascertainable, the officer could detain the vehicle's driver for proper questioning and investigation.

But this Court fails to persuade me Defendants' properly mounted foreign license plate failed to comply with 47 Okla. Stat. § 1113.A. This case is not about "predicting" how Oklahoma's highest court *might* interpret § 1113.A. This case is about due process of

10

law which requires fair warning–warning Defendants did not receive.[4]  Because the

Court's opinion sets a dangerous precedent by construing a state penal statute based

upon little more than individual predilections, I dissent.  I would reverse the decision

of the district court and order the evidence suppressed.

---

[4]  The Court mischaracterizes the premise of my dissent as "due process requires *any penal statute containing an 'ambiguity'* to be construed in favor of the defendant." Court's Op. at 18 (emphasis added).  I have never endorsed such a proposition and never will.

