**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 24, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JESUS FIGUEROA-LABRADA, a/k/a
Chuy,

     Defendant - Appellant.

No. 13-6278

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 5:11-CR-00234-HE-3)**
_____

Virginia L. Grady, Federal Public Defender, Interim, and O. Dean Sanderford, Assistant Federal Public Defender, Denver, Colorado, for Defendant-Appellant Jesus Figueroa-Labrada, a/k/a Chuy.

Sanford C. Coats, United States Attorney, Steven W. Creager, Special Assistant U.S. Attorney, and David P. Petermann, Assistant U.S. Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee United States of America.

_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**MORITZ,** Circuit Judge.
_____

Jesus Figueroa-Labrada ("Figueroa") appeals from the district court's denial of his request for a reduced sentence under the "safety-valve" provision of 18 U.S.C. § 3553(f). The district court held § 3553(f) did not apply because Figueroa failed to make the disclosures necessary to support a reduced sentence before his initial sentencing hearing.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we reject the district court's interpretation of § 3553(f). We conclude that when a defendant provides information to the government for the first time on remand, but before the resentencing hearing, the plain text of § 3553(f) requires the district court to consider that information in determining whether the defendant has satisfied § 3553(f). Because the district court here failed to do so, we reverse and remand for the district court to determine Figueroa's eligibility for a safety-valve sentence.

## BACKGROUND

After a jury convicted Figueroa of conspiring to possess methamphetamine with intent to distribute, the district court attributed to Figueroa 746.19 grams of a mixture or substance containing a detectable amount of methamphetamine—the total amount of methamphetamine involved in the conspiracy—and sentenced him to 120 months' imprisonment. On direct appeal, a panel of this court reversed his sentence and remanded for resentencing based on the district court's failure to make particularized findings to support attributing the total quantity to Figueroa. In doing so, the panel noted that it was "reasonably probable" that only 56.7 grams of the methamphetamine mixture could be attributed to Figueroa based on his participation in the conspiracy. *See United States v. Figueroa-Labrada*, 720 F.3d 1258, 1261-63, 1268 (10th Cir. 2013) ("*Figueroa I*").

2

On remand, the government presented no additional evidence regarding drug quantity, and the district court therefore attributed to Figueroa 56.7 grams of methamphetamine mixture. That amount carried a five-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(viii), and the district court determined Figueroa's sentencing range was 63 to 78 months. But before his resentencing hearing, Figueroa sought a lower sentencing range, arguing he qualified for a reduced sentence under the "safety-valve" provision of § 3553(f). That provision allows a defendant to receive a sentence lower than an applicable mandatory minimum sentence if, *inter alia*— "not later than the time of the sentencing hearing"—he truthfully provides the government all the information he possesses regarding his offenses. Had the district court granted Figueroa's request, Figueroa would have avoided the five-year mandatory minimum and qualified for a two-level reduction in his base offense level, thereby lowering his advisory Guidelines range to 51 to 63 months. *See* U.S.S.G. § 2D1.1(b)(16).

Although Figueroa did not attempt to cooperate with the government prior to his initial sentencing hearing, he provided enough truthful information before his resentencing hearing to gain the government's support of his safety-valve request. Specifically, before Figueroa's resentencing hearing, the prosecutor filed an "advisement to the court" indicating that Figueroa had met all five § 3553(f) requirements and specifically affirming that Figueroa had provided the government all information and evidence he possessed concerning the offenses. Further, at Figueroa's resentencing hearing, the prosecutor characterized Figueroa's disclosures as "truthful," reiterated Figueroa had met all five safety-valve requirements, and agreed Figueroa's safety-valve

3

request was timely, stating "the case law seems to suggest safety valve can be considered for re-sentencing." Resent. Hr'g Tr., Doc. 412, at 8, 13.

Despite the government's support of Figueroa's safety-valve request, the district court denied the request because Figueroa failed to provide the required disclosures prior to his initial sentencing hearing. The court then imposed a 63-month sentence.

Figueroa timely appeals the denial of his safety-valve request.

## DISCUSSION

The sole issue in this appeal is whether § 3553(f)'s safety-valve is available to Figueroa, who did not cooperate or seek safety-valve relief prior to his initial sentencing hearing, but instead sought to satisfy the safety-valve requirements for the first time on remand before his resentencing. As a matter of first impression, based on the plain text of § 3553(f), we conclude that when a defendant provides information to the government for the first time on remand, before the resentencing hearing, a district court must consider that information in determining the defendant's eligibility for a safety-valve sentence.

**I.      The plain language of 18 U.S.C. § 3553(f) requires a district court to consider information a defendant provides to the government for the first time before the resentencing hearing.**

A defendant must satisfy five requirements to be eligible for a reduced sentence under § 3553(f)'s safety-valve provision. Only the fifth requirement, 18 U.S.C. § 3553(f)(5), is at issue here. That subsection mandates imposition of a Guidelines sentence "without regard to any statutory minimum sentence, *if the court finds at sentencing*, after the Government has been afforded the opportunity to make a recommendation, that—"

4

> *not later than the time of the sentencing hearing*, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(5) (emphasis added).

Stated another way, this section requires the district court to grant safety-valve relief if it finds (1) at *sentencing*, (2) after the government has been afforded the opportunity to make a recommendation, (3) that not later than the time of *the sentencing hearing* the defendant truthfully provided the government all information and evidence the defendant had concerning the offense.

In finding § 3553(f) did not apply to Figueroa's safety-valve disclosures, the district court emphasized the statute's requirement that the defendant provide information "not later than the time of the *sentencing* hearing"—a phrase the district court interpreted to exclude disclosures made before a *re*sentencing hearing. Figueroa contends (as did the government below) that the use of the phrase "sentencing hearing" includes resentencing hearings.

We review de novo a district court's "legal interpretation guiding its application of the safety-valve provision." *United States v. Cervantes*, 519 F.3d 1254, 1256 (10th Cir. 2008). The starting point for our review is the safety-valve provision itself. If that provision is clear and unambiguous, our inquiry ends and we give effect to the statute's plain language. *United States v. Sprenger*, 625 F.3d 1305, 1307 (10th Cir. 2010). In

5

ascertaining the statute's plain meaning, the "[p]roper interpretation of a word 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedent or authorities that inform the analysis.'" *United States v. Ko*, 739 F.3d 558, 560 (10th Cir. 2014) (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)).

The disputed phrase here requires a defendant to make necessary disclosures "not later than the time of the sentencing hearing." This phrase clearly and unambiguously refers to "the sentencing hearing" at issue, whether it's an initial, second, or subsequent sentencing hearing. The government agrees that throughout § 3553, "sentencing" refers to whichever sentencing is at issue, including any resentencing. And it provides no good reason for interpreting that word any differently in § 3553(f)(5).

Nothing in the text of § 3553(f)(5) suggests that—unlike any other reference to "sentencing" in the same statute—the phrase, "not later than the time of the sentencing hearing," should be read to include an extra word—"not later than the time of the *initial* sentencing hearing." As Figueroa argues, "the ordinary understanding" of the phrase "sentencing hearing" includes resentencing hearings as well as initial sentencing hearings. Moreover, the government's argument ignores the statutory context of that phrase. *See United States v. Villa*, 589 F.3d 1334, 1343 (10th Cir. 2009) (explaining that statutory text, plain or not, derives meaning from context).

The introductory phrase to § 3553(f) requires the district court to impose a Guidelines sentence "without regard to any statutory minimum sentence, if the court finds *at sentencing*" that the defendant has satisfied all five safety-valve conditions. Thus,

6

by focusing solely on the phrase "not later than the time of the sentencing hearing" in § 3553(f)(5), the government and our dissenting colleague conveniently ignore the appearance—*within the same sentence*—of the phrase "at sentencing." And in context, the phrase, "the sentencing hearing," clearly refers back to the generic "at sentencing" in the opening sentence of § 3553(f). The dissent offers no good reason to interpret the same word differently within that same sentence.[1]

Section 3553, when considered as a whole, further compels us to reject this interpretation. For example, § 3553(c) provides that a sentencing court, "*at the time of sentencing*, shall state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c) (emphasis added). Section 3553(c) indisputably applies to any sentencing hearing. *See United States v. Rose*, 185 F.3d 1108, 1113 n.3 (10th Cir. 1999) (when district court fails to comply with § 3553(c), remedy is to remand for resentencing that complies with § 3553(c)). Indeed, if this court were to interpret the phrase "at the time of sentencing" in § 3553(c) to exclude resentencing hearings, the result would be unsupportable—a district court at resentencing could impose a sentence without stating reasons for the sentence imposed.

---

[1] Although the government does not make this distinction, the dissent suggests there is significance to § 3553(f)(5)'s reference to "*the* sentencing hearing." 18 U.S.C. § 3553(f)(5) (emphasis added); Dissent Op. at 4. Typically, use of the definite article "the" suggests that its noun is singular or unique. *See Colorado v. Sunoco, Inc.*, 337 F.3d 1233, 1241 (10th Cir. 2003). But while it might sometimes be a "reasonable linguistic inference," to interpret "the" in such a manner, here, the reference to "the" does not draw a substantive distinction between a first, second, or subsequent "sentencing hearing." *See United States v. DeGasso*, 369 F.3d 1139, 1147 (10th Cir. 2004).

7

Given the linguistic similarities between §§ 3553(f), 3553(f)(5), and 3553(c), we decline to assign the word "sentencing" a different meaning in these provisions. *See United States v. West*, 671 F.3d 1195, 1200 (10th Cir. 2012) (explaining "absent good reason to the contrary, 'when the same words are used in different sections of the law, they will be given the same meaning.'" (quoting *In re Harline*, 950 F.2d 669, 674 (10th Cir. 1991))).

The government not only fails to provide a good reason to construe the term "sentencing" differently in § 3553(f)(5), it conceded at oral argument that § 3553 generally applies at resentencing hearings. But, instead of accepting the plain meaning of § 3553(f)(5), the government suggests in its response brief that we look to 18 U.S.C. § 3742(f)(1) for guidance as to the meaning of "the sentencing hearing." That statute provides authority for appellate courts to remand for resentencing and, as the government points out, specifically refers to proceedings on remand as "further sentencing proceedings." The government thus reasons that a resentencing following remand is really just a continuation of the initial sentencing, and not a separate "sentencing hearing."

But to arrive at this conclusion, the government overlooks relevant statutory text and context. Under § 3742(f)(1), we remand for "further sentencing proceedings" if we conclude the district court erred in imposing a sentence. The plain language of § 3742(g) controls the district court's actions on remand: "A district court to which a case is remanded pursuant to subsection (f)(1) . . . *shall resentence a defendant in accordance with section 3553* and with such instructions as may have been given by the court of

8

appeals . . . ." (Emphasis added.) Because the safety-valve provision is found in § 3553, the district court was required, on remand, to resentence Figueroa in accordance with § 3553, which necessarily included consideration of Figueroa's safety-valve eligibility under § 3553(f). *See United States v. Verners*, 103 F.3d 108, 110 n.3 (10th Cir. 1996) (finding that safety-valve relief under U.S.S.G. § 5C1.2 "is not discretionary; it requires a departure from the minimum sentence on finding that certain conditions are met"). Even our dissenting colleague agrees on this point. Dissent Op. at 1-2.

Simply stated, there is no textual support for interpreting § 3553(f)(5)'s phrase "not later than the time of the sentencing hearing," as referring only to "the original sentencing hearing." *See* Dissent Op. at 4. Unlike the district court, the government, and our dissenting colleague, we decline to augment the statute with language not found therein. *See Christner v. Poudre Valley Co-op. Ass'n*, 235 F.2d 946, 950 (10th Cir. 1956) ("Courts should confine themselves to the construction of a statute as it is written and not attempt to supply omissions or otherwise amend or change the law under the guise of construction.").

Rather, we read § 3553(f)(5)'s requirement as clarifying that because the district court must make safety-valve findings "at sentencing," and because the government must have an opportunity to make a recommendation, the defendant must make the necessary disclosures *before* "the sentencing hearing" at issue begins, regardless of whether it is an initial, second, or subsequent sentencing hearing. *See United States v. Galvon-Manzo*, 642 F.3d 1260, 1267 (10th Cir. 2011) ("[G]enerally speaking, any and all disclosures for

9

safety-valve purposes are timely only if they occur prior to the commencement of the sentencing hearing.").

Applying our plain-language interpretation of § 3553(f) to the narrow circumstances before us, we conclude the statute permits a defendant to make safety-valve disclosures for the first time on remand before a resentencing hearing. And that same statutory provision, read in conjunction with § 3742(g), requires a district court to consider such disclosures in determining safety-valve eligibility at resentencing following remand.

**II.    This court's precedent as well as the decisions of our sister circuits do not address the question presented here.**

The government relies heavily on *United States v. Galvon-Manzo*, 642 F.3d 1260 (10th Cir. 2011), and *United States v. Acosta-Olivas*, 71 F.3d 375 (10th Cir. 1995), to support its position that to be eligible for a safety-valve sentence a defendant must satisfy the § 3553(f) factors before his initial sentencing hearing. Neither case sheds any real light on the question presented here.

*Galvon-Manzo* concerned two defendants' attempts *during* their initial sentencing hearings to alter untruthful information they previously provided to the government in support of their safety-valve requests. The district court denied the defendants' requests and this court affirmed, holding the district court did not err in determining the defendants failed to satisfy § 3553(f)'s requirement to provide truthful and complete statements to the government.

10

In affirming the district court, the *Galvon-Manzo* panel noted, "generally speaking, any and all disclosures for safety-valve purposes are timely only if they occur *prior to the commencement of the sentencing hearing*." 642 F.3d at 1267 (emphasis added). Contrary to the government's assertion, this simple restatement of the statute's text says nothing about whether the phrase, "not later than the time of the sentencing hearing," requires the district court to ignore truthful and complete information a defendant provides for the first time on remand before his resentencing hearing.

The *Galvon-Manzo* panel further explained that the underlying purpose of the safety-valve serves to "'benefit only those defendants who truly cooperate.'" 642 F.3d at 1268 (quoting *United States v. Marin*, 144 F.3d 1085, 1094 (7th Cir. 1998)). Thus, by requiring disclosures "not later than the time of the sentencing hearing," Congress intended to prevent a situation where "'a defendant may lie to the government and still qualify for safety valve relief merely by altering his story at sentencing in order to comport with the evidence presented by the government during the hearing.'" *Id.* (quoting *Marin*, 144 F.3d at 1095).

The government urges the court to address these policy concerns by contorting the statute to forbid a district court from considering a defendant's request for a safety-valve sentence for the first time on remand before his resentencing hearing. Notably, in so doing, the government ignores significant factual differences between this case and *Galvon-Manzo*, namely that Figueroa made no disclosures before or during his initial sentencing hearing whereas both defendants in *Galvon-Manzo* admitted making untruthful disclosures before their initial sentencing hearings and sought to provide

11

additional information *during* their sentencing hearings. Had the district court properly considered Figueroa's disclosures and found them to be untruthful or incomplete, the district court would have been within its discretion to deny Figueroa's request. But that is not what happened here, and *Galvon-Manzo* does not instruct interpreting the statute in the manner the government suggests.

*Acosta-Olivas* is similarly inapt. There, the district court interpreted § 3553(f)(5) to require a defendant to reveal only information regarding his own involvement in the crime, not information he possessed regarding other participants. Based on this interpretation, the district court determined the defendant "qualified under § 3553(f) for relief from the minimum mandatory sentence" because he had written "a letter describing his own involvement in the conspiracy." *Acosta-Olivas*, 71 F.3d at 377. The government appealed, contending the defendant's letter describing only his own involvement in the drug conspiracy did not satisfy § 3553(f)(5), which requires a defendant to "truthfully provid[e] to the Government *all* information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f)(5) (emphasis added). This court agreed with the government and remanded the case with the following instructions:

> [W]e REMAND this case with instructions to vacate the sentence and resentence. If, at resentencing, the court makes a factual finding that, in deciding what information to disclose to the government, Mr. Acosta-Olivas relied upon the district court's interpretation of § 3553(f)(5), the court shall allow him the opportunity to comply with the statute as this court has interpreted it in this opinion.

*Acosta-Olivas*, 71 F.3d at 379-80.

12

The government and our dissenting colleague rely heavily on *Acosta-Olivas*'

remand instruction. Dissent Op. at 3, 11-12. They interpret it to imply a general

prohibition against permitting a defendant to comply with § 3553(f) by providing the

government information on remand before resentencing. But they place more weight on

the instruction than it can bear. *Acosta-Olivas* simply did not address, either in its holding

or in its remand instruction, whether the phrase "the sentencing hearing" is limited to the

original sentencing hearing.

Like *Galvon-Manzo*, *Acosta-Olivas* neither states nor implies a general rule

against allowing a defendant to comply with § 3553(f) by making disclosures for the first

time on remand before a resentencing hearing. Rather, when a district court determines

whether a defendant has satisfied § 3553(f), it must consider any information the

defendant provided to the government for the first time before a resentencing hearing. *Cf.*

*Verners*, 103 F.3d at 111 (considering whether defendant's statements on remand

regarding her knowledge of criminal enterprise were truthful and complete).

Finally, we note that several of our sister circuits have assumed without deciding

that § 3553(f)(5) permits consideration of the safety-valve provision at resentencing. *See,*

*e.g.*, *United States v. Purnell*, 361 F. App'x 384, 385 (3d Cir. 2010) (unpublished) (noting

that defendant qualified for safety-valve sentence upon resentencing when he "met with

law enforcement authorities following remand");[2] *United States v. DeMott*, 513 F.3d 55,

58 (2d Cir. 2008) (assuming district court could consider defendant's "additional safety

---

[2] *But compare United States v. Giraldo*, 52 F. App'x 584, 586-87 (3d Cir. 2002)
(unpublished) (holding a safety-valve disclosure made before resentencing, and not
before the initial sentencing, is untimely).

valve proffer prior to a second resentencing," and noting § 3553(f)(5) requires the resentencing judge to make factual findings as to whether defendant made complete and truthful proffer); *United States v. Flanagan*, 80 F.3d 143, 145 n.1 (5th Cir. 1996) (pointing out that government did not argue newly enacted safety-valve provision could not be considered at resentencing hearing and noting "without expressing an opinion regarding whether the [safety-valve] provision should apply at a resentencing," that district courts have found the provision applies to a resentencing on remand).

Moreover, the unpublished Ninth Circuit case cited by the government in support of its interpretation, *United States v. Ferret-Castellanos*, 108 F.3d 339, 1996 WL 733198 (9th Cir. 1996) (Table) (unpublished), is distinguishable. There, the Ninth Circuit held that a defendant's offer to truthfully provide information at two resentencing hearings was "too late" under § 3553(f)(5). 1996 WL 733198, at *2. But the court's more significant concern seemed to be truthfulness, rather than timeliness of the disclosures, as the court emphasized that the defendant had already "lied to the court at his initial sentencing hearing." 1996 WL 733198, at *2. This unpublished, out-of-circuit decision, based on threadbare analysis and distinct facts, has little persuasive value.[3]

On the whole, the cases discussed by the government do not dissuade us from interpreting § 3553(f) consistently with the plain language of the statute. Consequently,

---

[3] Although not specifically pertinent to our discussion here since this case does not involve prior untruthful disclosures, we note that *Ferret-Castellanos* appears inconsistent with a more recent Ninth Circuit case *United States v. Mejia-Pimental*, 477 F.3d 1100 (9th Cir. 2007). There, the court held that a defendant remained eligible for the safety valve at resentencing *despite* his prior lies and omissions in support of his safety-valve request.

14

we hold the district court erred in concluding that because Figueroa had not made the requisite disclosures before his initial sentencing hearing, it was not required to consider whether the information Figueroa provided to the government otherwise satisfied the requirements of § 3553(f).

### III.    The district court's error was not harmless.

Finally, the government argues the district court's error was harmless because the district court indicated that had it reached the merits, it would have denied Figueroa's safety-valve request. In support, the government cites several statements made by the district court on remand expressing skepticism about the truthfulness of Figueroa's disclosures and the level of his involvement in the "drug operation."

"Harmlessness must be proven by a preponderance of the evidence, and the burden of making this showing falls on the beneficiary of the error—in this case, the government. A harmless error is that which did not affect the district court's selection of the sentence imposed." *United States v. Lente*, 647 F.3d 1021, 1037-38 (10th Cir. 2011) (citations and internal quotation marks omitted).

After carefully reviewing the sentencing transcript and the district court's statements, we do not interpret those statements as a clear indication the district court would have denied Figueroa's request for safety-valve relief had it considered the substance of Figueroa's disclosures.

First, the district court carefully distinguished its consideration of the "timeliness" of the disclosures and the truthfulness of the same. Second, the court generally prefaced its statements regarding Figueroa's depth of involvement in the conspiracy with qualifiers

15

such as "it does seem" and the "facts here suggest." Resent. Hr'g Tr., Doc. 412, at 30. Finally, we cannot ignore that at resentencing the government repeatedly characterized Figueroa's statements as both truthful and complete. In fact, the prosecutor specifically represented to the court that prior to the resentencing hearing, Figueroa truthfully provided to the government all information and evidence he possessed concerning the offenses.

In sum, the government has not shown by a preponderance of the evidence that the district court would have denied Figueroa's request for safety-valve relief had it fully considered that request. Therefore, we remand this case for resentencing yet again.

On this remand, we instruct the district court to resentence Figueroa "in accordance with section 3553," as required by § 3742(g), which necessarily includes the determination of Figueroa's eligibility for safety-valve relief.

## CONCLUSION

The district court erred in concluding, as a matter of law, that it could not consider Figueroa's disclosures in support of his application of 18 U.S.C. § 3553(f) at resentencing simply because Figueroa failed to make the requisite disclosures before his initial sentencing hearing. Consequently, we reverse Figueroa's sentence and remand for resentencing in accordance with § 3553, including a determination of Figueroa's eligibility for a reduced sentence under § 3553(f).

16

*United States v. Figueroa-Labrada*, No. 13-6278

**PHILLIPS**, Circuit Judge, dissenting:

I agree with the majority that the text of 18 U.S.C. § 3553(f) permits a defendant to request safety-valve relief for the first time at a resentencing. But I disagree with the majority that a defendant may support that request with safety-valve information first provided to the government after the initial sentencing hearing. The plain language of § 3553(f)(5), and our case law interpreting it, requires full and truthful disclosure before the initial sentencing hearing begins. Because I conclude that the district court did in fact consider Figueroa's safety-valve request at the resentencing hearing and properly denied it because Figueroa had failed to disclose the necessary safety-valve information before his initial sentencing hearing, I respectfully dissent.

## I.   Safety-Valve Relief and Resentencing

Under 18 U.S.C. § 3742(f)(1), we remand for "further sentencing proceedings" if we conclude that a district court erred in imposing a sentence. Under § 3742(g), "[a] district court to which a case is remanded pursuant to subsection (f)(1) . . . shall resentence a defendant in accordance with section 3553 and with such instructions as may have been given by the court of appeals. . . ." Nothing suggests that a district court may pick and choose what parts of § 3553 to apply at resentencing. Because the safety-valve provision is found within § 3553, I conclude that a district court must consider safety-valve eligibility at any resentencing if a defendant seeks it.[1] *See United States v. Verners*, 103

---

[1] Consistently with this view, I read § 3553(f)'s requirement that district courts consider safety-valve relief after the five listed showings "at sentencing" to mean at the

F.3d 108, 110 n.3 (10th Cir. 1996) (finding that safety-valve relief under USSG § 5C1.2

"is not discretionary; it requires a departure from the minimum sentence on finding that

certain conditions are met.").

## II. Timely Disclosures Under § 3553(f)(5)

This appeal raises a single question:[2] What does 18 U.S.C. § 3553(f)(5) mean when it

requires that "not later than the time of the sentencing hearing" a defendant has fully and

truthfully provided to the government all information and evidence he has about his

offense or offenses? The district court concluded, and the government now argues,[3] that

the time for disclosing the necessary information ended when Figueroa's original

---

sentencing and any resentencing. And I also agree that this use of "at sentencing" is "*within the same sentence*" as § 3553(f)(5)'s use of "not later than the time of the sentencing hearing . . . ." *See* Maj. Op. at 7 (emphasis in original). But the majority must also recognize that subsection (f)'s "at sentencing" is separated by more than one hundred words—and four numbered conditions—from subsection (f)(5)'s "not later than the time of the sentencing hearing."  Because sentencings can be followed by resentencings, as here, I disagree with the majority that "at sentencing" and "the time of the sentencing hearing" must always refer to the same sentencing hearing. Indeed, if they do, one can forcefully argue that subsection (f)(5)'s quoted timing condition is superfluous.

[2] I agree with the majority that the district court did not make sufficient findings that it would have denied Figueroa safety-valve relief for failing to provide a full account of his and his co-conspirators' criminal activity. Maj. Op. at 15–16. That said, the district court did express skepticism about whether Figueroa had indeed fully disclosed all information and evidence required under § 3553(f)(5). R. vol. III at 46-47. This issue remains alive on remand.

[3] As the majority notes, the government told the district court at resentencing that it considered Figueroa's disclosures timely, stating that "the case law seems to suggest safety valve can be considered for re-sentencing." Maj. Op. at 4; R. vol. III at 24, 29. At oral argument, the government's counsel explained its change in position as resulting from "fresh eyes on the district court ruling and further legal analysis of the district court's ruling."

2

sentencing hearing began. In other words, the district court concluded that § 3553(f)(5)'s time limit of "not later than the time of the sentencing hearing" did not stretch forward to allow disclosure of safety-valve information long after the initial sentencing commenced. I agree with this view.

A. <u>The plain language of § 3553(f) and our court's precedent forecloses any opportunity for Figueroa to make first-time safety-valve disclosures on remand.</u>

I would affirm because I believe—as supported by a key Tenth Circuit case—that the district court properly interpreted the plain language of 18 U.S.C. § 3553(f)(5). In *United States v. Acosta-Olivas*, 71 F.3d 375 (10th Cir. 1995), the district court awarded safety-valve relief[4] to Acosta-Olivas after requiring that he truthfully disclose only his own offense conduct, but not that of his co-conspirators. *Id.* at 377. Because the district court erred by limiting the required disclosure, this court remanded "this case with instructions to vacate the sentence and resentence." *Id.* at 379–80. Because this court could not tell whether the district court's legal error had caused Acosta-Olivas's incomplete disclosure, we remanded as follows: "If, at resentencing, the court makes a factual finding that, in deciding what information to disclose to the government, Mr. Acosta-Olivas relied upon the district court's interpretation of § 3553(f)(5), the court shall allow him the opportunity to comply with the statute as this court has interpreted it in this opinion." *Id.* at 380.

---

[4] Section 3553(f) applies "to all sentences imposed on or after" September 23, 1994, ten days after the date of enactment. Pub. L. No. 103-322, § 80001(a), 108 Stat. 1796, 1985-86 (1994).

The upshot of this remand language from *Acosta-Olivas* seems straightforward. Because we *allowed* Acosta-Olivas to produce more evidence about his co-conspirators' activities *if* the district court's error had caused him to withhold that information, it sensibly follows that we *disallowed* him to produce the additional information if the district court's error did not cause his deficient disclosure. For a variety of reasons, I conclude that *Acosta-Olivas* meant just exactly that.

First, the plain language of § 3553(f)(5) requires full disclosure of information to the government "not later than the time of *the* sentencing hearing." (emphasis added.) The majority treats the article "the" as unimportant, instead choosing to focus on the words "sentencing hearing." Maj. Op. at 6-7. But "the" matters. After all, it is our duty to give effect, if possible, to every clause and word of a statute. *Duncan v. Walker*, 533 U.S. 167, 174 (2001). The singular "the" lends support to an interpretation that "the sentencing hearing" refers to *one* sentencing hearing—which, because it is the first one, must be the original sentencing hearing.

Second, other circuits examining *Acosta-Olivas* construe it the same way that I do. They view *Acosta-Olivas*'s remand instruction as carving an interest-of-justice exception to a general rule prohibiting a defendant from disclosing additional safety-valve information at resentencings. *See United States v. Madrigal*, 327 F.3d 738, 746-47 (8th Cir. 2003) (stating that "the Tenth Circuit [in *Acosta-Olivas*] has suggested that a defendant, *under the right circumstances*, may also qualify for safety valve relief if the defendant comes clean at resentencing." (emphasis added)); *United States v. Flanagan*, 80 F.3d 143, 147 (5th Cir. 1996) (citing *Acosta-Olivas* and allowing the defendant an

4

opportunity on remand to disclose truthful information for safety-valve relief *if* the district court's legal error in placing the burden of proof on the government led to Flanagan's not fully disclosing information at his original sentencing hearing, and barring safety-valve relief if not).

Third, I agree with the government that it would be an odd result to disallow Figueroa from proffering safety-valve disclosures after his original sentencing hearing had begun, but then to allow him to do so months later. *See* Appellee's Br. at 17–18. In fact, our precedent emphasizes the sound policy of requiring a defendant to disclose information before the original sentencing. In *United States v. Galvon-Manzo*, 642 F.3d 1260, 1268 (10th Cir. 2011), we approved of a general safety-valve policy as "serv[ing] the government's interest in full, truthful disclosures from defendants about their own and related criminal conduct." Clarifying this, we noted that "[f]orcing the government to wait until the middle of a sentencing hearing before it obtains such information interferes with that policy and forces the government to conduct further investigations to determine the truthfulness of the disclosures." *Id.*

Consequently, we did not permit a defendant to disclose additional safety-valve information—even  during his original sentencing hearing—because "a defendant may lie to the government and still qualify for safety valve relief merely by altering his story at sentencing in order to comport with the evidence presented by the government during the hearing." *Id.* (quoting *United States v. Marin*, 144 F.3d 1085, 1095 (7th Cir. 1998)). Accordingly, given the importance of the timeliness of fully truthful disclosure,

5

contrasted with Figueroa's long delay in disclosing, I believe these policy grounds also are consistent with my interpretation of *Acosta-Olivas*.

Fourth, showing that *Acosta-Olivas* meant what it said, this court 16 years later said it again in *Galvon-Manzo*, 642 F.3d at 1268. That case involved two men stopped for speeding in a car containing 12 kilograms of cocaine in a hidden compartment. *Id.* at 1262. The two men had been in regular contact with a California source subject to a Drug Enforcement Administration (DEA) wiretap; law enforcement had intercepted multiple calls between the defendants and the drug source. *Id.* When police arrested them, the defendants denied knowing the cocaine was in their car. *Id.* Then, afterward, both defendants failed to truthfully disclose information during debriefing proffers with the DEA—where agents specifically informed the defendants that a sentence reduction depended on their providing honest information. *Id.* at 1263. Before sentencing, Guzman-Manzo emailed an affidavit to the government providing only limited details about his drug activity. *Id.* At sentencing, his counsel requested that Guzman-Manzo be "afforded another opportunity to provide a statement to the government," which I understand to mean another chance to sit down for a debriefing proffer. *Id.* at 1264.

The district court denied this request, saying that "in view of the fact that there have been two dishonest attempts, I would not be prepared to give any credence to what he said the third go around. . . ." *Id.* The district court declared the two defendants ineligible for safety-valve relief, pointing to their failed proffers and lack of credibility. *Id.* at 1265. In response to Galvon-Manzo's statement that he was "prepared today at sentencing" to clarify his and his co-defendant's role in the offense, the district court replied:

6

> [T]here comes a time when this ends. . . . Two opportunities, now when it is clear that his misstatements and omissions and flat-out falsehoods have been revealed, now is not the time when a defendant can come in and say, "All right, I was dishonest before, but now in front of you, judge, I'll tell the truth." I would view that with some skepticism, and that is not the purpose of this.

*Id.*

The *Galvon-Manzo* court held—as a matter of first impression—that "the resolution of disputes arising out of or relating to the debriefing process lies within the sound discretion of the district court." *Id.* at 1267. In this regard, it explained that "the district court may exercise discretion to determine whether a particular defendant should be entitled to one, two or several debriefing sessions." *Id.* Next, addressing a separate issue of timeliness of a defendant's safety-valve disclosures, the court also held that "generally speaking, any and all disclosures for safety-valve purposes are timely only if they occur prior to the commencement of the sentencing hearing." *Id.* (emphasis added) (citations omitted). Under these standards, the court concluded that the district court had not erred in its "refusal to allow Guzman-Manzo to make further disclosures after the sentencing hearing commenced, in an effort to obtain safety-valve relief." *Id.* at 1268–69.

On appeal, relying on *Acosta-Olivas*, Guzman-Manzo argued "if [the Tenth Circuit] conclude[s] that 'disclosure at or during the sentencing hearing is not timely, such a pronouncement should be effective prospectively and should not preclude the defendant from attempting to comply with such a reading of the statute on remand.'" *Id.* at 1269 n.5 (citation omitted). In essence, he argued that because any such rule was not effective at his sentencing, it should not bind him.

7

Important for our purposes, the *Galvon-Manzo* court commented on the meaning of *Acosta-Olivas*: "We allowed the defendant in *Acosta-Olivas* on remand and at resentencing to comply with the safety-valve provision *if* the court, at resentencing, found that the defendant had relied upon an erroneous interpretation of the statute by the district court at the initial sentencing." *Id.* (emphasis in original). The court declined to remand, concluding that the district court had "provided no such erroneous interpretation and we see no reason to remand the matter for resentencing." *Id.* The court further concluded that the district court "did not decide against Guzman-Manzo because he was seeking to provide the information too late (i.e., after the sentencing hearing commenced) but because the district court decided that he was simply not reliable and truthful." *Id.*

I share the *Galvon-Manzo* court's understanding of *Acosta-Olivas*. In *Galvon-Manzo*, the court italicized the "if"—emphasizing the condition on the district court's allowing additional safety-valve disclosures at a resentencing. *Id.* As did *Acosta-Olivas*, the court spoke of when a defendant is "allowed" to do so. Here, like Guzman-Manzo and unlike Acosta-Olivas, Figueroa was not allowed a chance to offer new disclosures at a resentencing hearing because his deficient (completely lacking) safety-valve disclosures resulted from his own choice not to fully disclose at his original sentencing hearing, not from any legal error of the district court.

B.  Figueroa's arguments are unavailing.

As stated, I believe that the *Acosta-Olivas* court "allowed" Acosta-Olivas to disclose additional safety-valve information before his resentencing "if" he had failed to do so at the original sentencing hearing because of the district court's legal error, but that it also

8

otherwise disallowed any additional disclosures. *Acosta-Olivas*, 71 F.3d at 379–80. Yet Figueroa responds to this view with a rival interpretation. He reads *Acosta-Olivas*'s language as "simply set[ting] a limit on the district court's usual discretion to refuse repeated proffers from a defendant." Appellant's Br. at 21. Along the same line, he says that "[a]ll this Court was saying in *Acosta-Olivas* is that this usual discretion didn't apply if Acosta-Olivas's failure to make a complete proffer could be innocently explained by his reliance on the district court's interpretation. In that situation, the court was *required* to accept additional proffer." *Id.* (emphasis in original). For a variety of reasons, I am unpersuaded by the reasoning underlying Figueroa's creative argument.

First, starting with the basics, I agree that *Galvon-Manzo* held that "the resolution of disputes arising out of or relating to the debriefing process lies within the sound discretion of the district court" and that "the district court may exercise discretion to determine whether a particular defendant should be entitled to one, two or several briefing sessions." 642 F.3d at 1267. But *Galvon-Manzo* set the time for exercising this discretion as sometime before the original sentencing hearing begins. Figueroa blithely overextends this discretion as also applying at resentencings. As mentioned, he explains *Acosta-Olivas*'s remand condition as "simply set[ting] a limit on the district court's usual discretion to refuse repeated proffers from a defendant." Appellant's Br. at 21. He offers no supporting authority that this "usual discretion" applies when a defendant first requests safety-valve relief at a resentencing and, not until then, discloses the needed information.

9

Second, Figueroa's reading of the *Acosta-Olivas* court's remand language is implausible. As mentioned, Figueroa asserts that *Acosta-Olivas*'s remand language impliedly says that the district court *may* also allow him the opportunity to disclose new information on remand even if it finds that he chose not to do so at resentencing without this reliance. See Appellant's Br. at 21. The short answer is that this court in *Acosta-Olivas* did not say that. Instead, it spoke of allowing further disclosures at resentencing "if" he would have provided the same information at his original sentencing absent the district court's legal error. *See Acosta-Olivas*, 71 F.3d at 380. *Acosta-Olivas*'s tight remand language strongly supports a reading that, despite § 3553(f)(5)'s general prohibition against late disclosures, Acosta-Olivas got leeway to disclose safety-valve information after his original sentencing only if necessary to avoid any injustice caused by the district court's legal error that he need not disclose the conduct of his co-conspirators. *See Flanagan*, 80 F.3d at 147 (citing *Acosta-Olivas* and ruling that if defendant's failure to fully disclose was not caused by the district court's erroneous interpretation of the safety-valve statute, "the safety valve statute is not available" and the "district court should . . . proceed to resentence the defendant without the benefit of such provision.").

Third, we know that if Figueroa had tried to make safety-valve disclosures after his original sentencing hearing began, he would have run afoul of the general rule that "any and all disclosures for safety-valve purposes are timely only if they occur prior to the commencement of the sentencing hearing." *Galvon-Manzo*, 642 F.3d at 1267. And had he tried to appeal on plain error that he was entitled to safety-valve despite not raising it in

10

the district court, he would have lost. *See United States v. Williams*, 480 F. App'x 940, 942–43 (10th Cir. 2012) (unpublished) (declining to reverse for plain error failure to award safety-valve relief even when  substantial-assistance relief had been awarded under USSG § 5K1.1 "because a hearing on remand might show that the defendant who claims entitlement to a safety-valve reduction was in fact not so entitled."). Figueroa's "blink-off, blink-on" switch for safety-valve disclosures makes little sense, results in disparities, and has no solid law behind it.

Fourth, as the government notes, the *Acosta-Olivas* court had no reason to fear that the district court would treat Acosta-Olivas poorly on remand. Appellee's Br. at 22. Indeed, the district court had treated him too kindly the first time around (at least under the plain language of § 3553(f)(5)). Under these circumstances, it is hard to imagine a need to guard Acosta-Olivas against the district court's depriving him of an opportunity to fully disclose the details of his offense. I do not believe that the remand was to guard against this long shot.

C.  The Majority's interpretation of *Acosta-Olivas*'s remand instruction is untenable.

The majority disputes that *Acosta-Olivas*'s remand instruction "impl[ies] a general prohibition against permitting a defendant to comply with § 3553(f) by providing the government information on remand before resentencing." Maj. Op. at 13. Yet without any analysis of the remand instruction's language or the context in which *Acosta-Olivas* used it, the majority dismisses the instruction by concluding that it "did not address . . . whether the phrase 'the sentencing hearing' is limited to the original sentencing hearing."

11

Maj. Op. at 13. The summary conclusion enables the majority to avoid addressing two problems. First, under *Acosta-Olivas*, the majority should acknowledge that a district court may at least sometimes refuse to consider safety-valve information disclosed after an initial sentencing but before a resentencing. This runs counter to the majority's rule that § 3553(f)(5) always commands district courts on remand to allow defendants second opportunities to disclose additional safety-valve information and then to determine whether the delayed disclosures entitle defendants to safety-valve relief. Maj. Op. at 2, 10. The majority points to nothing in § 3553(f) enabling district courts to condition—as this court did in *Acosta-Olivas*—what the majority views as an absolute statutory right to present safety-valve information on remand. I see nothing in §3553(f) doing so. Quite simply, the majority's rule cannot accommodate *Acosta-Olivas*'s condition. If the majority's rule is right, then *Acosta-Olivas* is wrong, and the majority should take the necessary steps to try to overrule it.

Second, the majority's interpretation of *Acosta-Olivas* and § 3553(f)(5) leads to an odd result—and one unlikely to be Congress's intended result. Under the majority's reading, someone like Acosta-Olivas is barred from supplementing his safety-valve disclosure despite already having at least partially disclosed the necessary information and now wanting to provide the rest (perhaps his coconspirators had pleaded guilty after his initial sentencing hearing), but someone like Figueroa can provide nothing and later have his earlier complete silence rewarded with an opportunity to disclose fully. In evaluating the sensibility of such a safety-valve scheme, we need to remember that Figueroa had every chance to seek safety-valve relief at his original sentencing and to

12

make the necessary safety-valve disclosures before that hearing started.[5] Figueroa's total failure to disclose information—as opposed to Acosta-Olivas's partial failure—should not propel Figueroa to greater relief on appeal.

1. *The Majority's cases do not compel its result.*

To bolster its view that § 3553(f)(5) requires a district court to allow a previously silent defendant to disclose the necessary truthful information at a resentencing, the majority relies on *Flanagan*, 80 F.3d at 145 n.1, for a footnote sentence saying that "without expressing an opinion regarding whether the [safety-valve] provision should apply at resentencing, we note that district courts have found the provision applies to a resentencing on remand." Maj. Op. at 14. This portion of *Flanagan* addresses whether defendants with pending appeals when § 3553(f) was enacted can qualify for safety-valve relief on remand. Additionally, *Flanagan* cited just one district court case in support, *United States v. Buffington*, 879 F. Supp. 1220, 1222 (N.D. Ga. 1995). That case was before the district court for an original sentencing—there was no remand. Although not an issue at its sentencing hearing, the court remarked that "[a]t least one court, however, has found that the new law applies to a resentencing on remand from a court of appeals even if the initial sentence occurred prior to the effective date." *Id.* (citing *United States v. Ekwunoh*, 888 F. Supp. 364, 365 (E.D.N.Y. 1994)). This offers Figueroa no help

---

[5] I recognize that Figueroa now blames his trial counsel for his not seeking safety-valve relief at his original sentencing. As did the district court, I view this as an issue of ineffectiveness of counsel, one which is better addressed in a petition under 28 U.S.C. § 2255. We have no way of knowing the reason Figueroa did not proffer, and ineffective assistance of counsel is just one of the myriad of possibilities.

13

because it only considers when § 3553(f) may apply when the original sentencing took place before § 3553(f) took effect.

In fact, as I explained earlier, *Flanagan* helps the government much more than it helps Figueroa. *Flanagan* did not allow the relief Figueroa now demands under § 3553(f)(5). Instead, that court simply allowed a remand on the question of safety-valve relief to ensure that Flanagan's failure to establish safety-valve eligibility did not result from the district court's erroneously placing the burden on the government to show *ineligibility*. *Flanagan*, 80 F.3d at 147 (citing *Acosta-Olivas*, 71 F.3d at 380). Accordingly, all told, *Flanagan* supports my view of *Acosta-Olivas* and offers Figueroa no help.

The majority also contends that *United States v. Mejia-Pimental*, 477 F.3d 1100 (9th Cir. 2007), supports its holding. Maj. Op. at 14 n.3. In that case, the court vacated the defendant's sentence and remanded a third time. *Mejia-Pimental*, 477 F.3d at 1102. In the midst of these lengthy proceedings, all of Mejia-Pimental's co-defendants, including an uncle, had pleaded guilty. *Id.* at 1102-03. Before his third sentencing hearing, Mejia-Pimental sought to "provide an in-person safety valve proffer" with the government. *Id.* at 1103. The government refused because Mejia-Pimental had previously lied and declined to proffer. *Id.* Soon before his third sentencing, Mejia-Pimental delivered a letter to the government detailing his involvement in the charged offenses and that of other persons too. *Id.* Although the government did not contest the truthfulness or completeness of the disclosure, the district court denied relief, concluding that Mejia-Pimental had not exhibited good-faith cooperation by awaiting pleas of his co-defendants before disclosing information. *Id.* The Ninth Circuit reversed, concluding that "the good faith inquiry

14

focuses on the defendant's cooperation in fully disclosing his knowledge of the charged offense conduct, not on identifying a defendant's pre-sentencing delays in providing this information." *Id.* at 1106.

The majority can rightly cite this case as one allowing a first effort at obtaining safety-valve relief at a resentencing hearing.[6] But the case is not persuasive because the government never contested that issue,[7] leaving the court simply to allow it without analyzing any of § 3553(f)'s language. Rather, the Ninth Circuit focused on whether Mejia's efforts to proffer were in "good-faith." *Id.* at 1104–08. In addition, the Ninth Circuit did not need to consider the effect of *Acosta-Olivas* in its analysis. The same is true of the majority's other cases in which the appellate court allowed safety valve eligibility to be considered for the first time on resentencing absent any objection from the government. *See United States v. Purnell*, 361 F. App'x 384, 385–86 (3d Cir. 2010) (unpublished) (summarily stating that "because Purnell met with law enforcement authorities following remand, he qualified for the safety valve provision in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a). . . ."); *United States v. DeMott*, 513 F.3d 55, 58 (2d Cir. 2008) (although it is unclear from the opinion when the defendant first sought safety-

---

[6] On the other hand, the government could cite *Mejia-Pimental* for disallowing any additional disclosures at the latest resentencing on remand: "Therefore, on remand, the district court must consider whether that final written proffer was in fact truthful and complete." *Id.* at 1109.

[7] Rather, the government opposed safety-valve relief because the government already knew the information the defendant would have provided. *Id.* at 1104–05.

valve relief, the court noted that "[t]he government has agreed to allow Day to make an additional safety valve proffer prior to a second resentencing.").[8]

2. *The Majority fails to undermine opposing cases.*

In *United States v. Ferret-Castellanos*, 108 F.3d 339, 1996 WL 733198 (9th Cir. 1996) (unpublished table decision), a drug-trafficking case, the Ninth Circuit required that a defendant's disclosures under § 3553(f) occur before his original sentencing rather than allowing them before his two resentencings. *Id.* at *2. It found disclosures made before the resentencing had come "too late." *Id.* The majority dismisses the case as being more concerned about the defendant's truthfulness rather than untimeliness of his safety-valve disclosures. Maj. Op. at 14. I do not read the case that way. After all, the court identified the issue before it as whether the defendant was ineligible for safety-valve relief "because he failed to disclose all information and evidence concerning his offense at his initial sentencing hearing." *Ferret-Castellanos*, 1996 WL 733198, at *1. I see nothing in *Ferret-Castellanos* suggesting that the defendant's disclosures at resentencing were untruthful. I simply see his explaining to the court his reason for delaying disclosure beyond his original sentencing hearing—"Ferret-Castellanos told the court that 'for

---

[8] Consistent with that, I do not believe that *United States v. Washman*, 128 F.3d 1305, 1306 (9th Cir. 1997), disallows a defendant from disclosing additional safety-valve information to the government before a resentencing, despite the district court's deciding on remand that it would review safety-valve eligibility on the record as it stood before the remand. The Ninth Circuit had no reason to analyze the timeliness of pre-resentencing disclosures because the defendant had not raised that as an issue. *Id.* at 1308. Similarly, although *United States v. Schreiber*, 191 F.3d 103, 106 (2d Cir. 1999), certainly supports my position when it says that "[t]he plain words of the statute provide only one deadline for compliance," I recognize that it concerned the timeliness of safety-valve disclosures before an initial sentencing and not a resentencing.

16

reasons of family loyalty and/or for legal reasons' he did not tell the Government prior to trial that his uncle had given him the car to drive." *Id.*

In addition, the majority tries to undercut *Ferret-Castellanos* by pointing to *Mejia-Pimental*, a later Ninth Circuit case that "appears inconsistent" with it. Maj. Op. at 14 n.3. I discussed Mejia-Pimental in some detail in the preceding section. Here, I would just note that Mejia-Pimental first tried to proffer before his original sentencing and then quit trying until soon before his third sentencing. *Mejia-Pimental*, 477 F.3d at 1102-03. The government did not challenge as untimely his attempt to gain safety-valve eligibility. *Id.* at 1103. Accordingly, the district and appellate court simply plowed forward without ever really considering the question. While I agree that the case does involve a defendant who tried to re-proffer at resentencing, I do not put much stock in the case as establishing a right to do so. Without the government's objecting to timeliness, and without any analysis from the Ninth Circuit on that issue, I hesitate to treat *Mejia-Pimental* as more persuasive than *Ferret-Castellanos*, when *Ferret-Castellanos* at least resolved the issue after the government objected to the timeliness of the defendant's disclosure of information.

I also downplay *Mejia-Pimental*'s persuasiveness because it cited—but did not discuss—another published Ninth Circuit decision speaking to our issue. In *United States v. Real-Hernandez*, 90 F.3d 356 (9th Cir. 1996), Real-Hernandez was charged with offloading 13 duffel bags containing 971 pounds of marijuana. *Id*. at 358. Real-Hernandez pleaded guilty and, at his debriefing, he denied knowing that he had offloaded marijuana. *Id.* Two months later, Real-Hernandez was charged in a second case with

17

loading about 1,800 pounds of marijuana on a boat two years earlier. *Id.* At his sentencing in the first case, Real-Hernandez sought safety-valve relief. *Id.* The government opposed this, pointing to the conduct underlying the second charge to show that at his proffer Real-Hernandez had not fully disclosed his criminal conduct. *Id.* at 359. Because Real-Hernandez was innocent until proven guilty, the court continued the sentencing hearing in the first case until the second case was resolved. *Id.*

Four months later, Real-Hernandez pleaded guilty in the second case a day after proffering to a separate government attorney and winning a safety-valve recommendation from him in the second case. *Id.* at 359. At his sentencing for the first case, the government argued that it was too late for Real-Hernandez to qualify for safety-valve relief. *Id.* Although the opinion is unclear on this point, it says that the district court agreed, stating that it would not "exercise the prerogative . . . to go below the mandatory minimum in this case." *Id.* at 360. The Ninth Circuit noted that it had "held in similar circumstances that such reasoning does not permit meaningful appellate review." *Id.* (citations omitted). Because the district court had not given reasons for denying safety-valve relief, the Ninth Circuit vacated the sentence and remanded for resentencing. *Id.*

As I read *Real-Hernandez*, the court remanded for the district court to determine whether he had fully disclosed information under § 3553(f)(5) *at the time of his original sentencing*. It held that "on remand Real-Hernandez must show that he 'truthfully provid[ed] to the Government all information and evidence [he] ha[d] concerning the offense or offenses.'" *Id.* at 362. The court looked to the date of the original sentencing (April 17, 1995) to establish the "time of sentencing" under § 3553(c) and just a few lines

18

later referred to "at sentencing" under § 3553(f). *Id.* at 360. Nothing suggests that the court thought its ordered resentencing hearing would fit under § 3553(f)(5)'s "not later than the time of the sentencing hearing" requirement, or allowed further disclosures of safety-valve information on remand. Based on *Real-Hernandez*, I cannot share the majority's appraisal of *Mejia-Pimental*.[9]

### III. Conclusion

I agree with the majority that § 3553(f) applies at resentencing hearings with the same force as at initial sentencing hearings. Accordingly, I agree that a district court must consider a defendant's request for safety-valve relief, even if first made before resentencing. But I believe that a defendant is stuck with whatever information he disclosed before the original sentencing hearing started. Because Figueroa offered no safety-valve disclosures to the government before that time, the district court correctly denied Figueroa's safety-valve request at the resentencing hearing. For the foregoing reasons, I respectfully dissent.

---

[9] The majority cites one case opposing its interpretation of § 3553(f)(5). Maj. Op. at 13 n.2. In *United States v. Giraldo*, 52 F. App'x 584, 585–88 (3d Cir. 2002) (unpublished), the Third Circuit rejected the defendant's argument that he could make a timely proffer at resentencing, when the defendant first requested safety-valve relief. At the same time, the Third Circuit looked to its own mandate rule to conclude that, "under the circumstances presented . . . [the defendant] waived his ability to avail himself of the Safety Valve provision." *Id.* at 587–88.